Frederica M. Poillon, Respondent, v. John James Herring Poillon, Appellant.

Hester B. Poillon, Co-respondent, Appellant.

*Divorce — presumption of innocence where the proof is as consistent with it as with guilt.*

Where the evidence, given in an action for an absolute divorce, concerning the relations existing between the defendant and the co-respondent, is just as consistent with an innocent interpretation as with a guilty one, the court should adopt the former interpretation in preference to the latter.

Appeal by the defendant, John James Herring Poillon, and by the co-respondent, Hester B. Poillon, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of June, 1902, as resettled by an order entered in said clerk's office on the 30th day of June, 1902, upon the decision of the court, rendered after a trial at the New York Special Term, granting the plaintiff a decree of absolute divorce.

*Eugene Frayer*, for the defendant appellant.

*A. H. Hummel*, for the defendant co-respondent, appellant.

*Robert B. Honeyman*, for the respondent.

McLaughlin, J. :

Action for an absolute divorce. The plaintiff had a judgment from which the defendant and the co-respondent have appealed. The complaint charged that the defendant committed adultery with the co-respondent at various times and places set out in the complaint. The trial court found that all of these allegations were true. It also found, specifically, that this defendant committed adultery with the co-respondent on the 10th of September, 1898.

After a careful consideration of all the evidence set out in the record I am of the opinion that the same was insufficient to justify the court in rendering the judgment which it did. There is absolutely no evidence sustaining the finding that the defendant committed adultery with the co-respondent except on one occasion, September 10, 1898, and, as to that, the finding is sustained only by

the uncorroborated testimony of Dolly Vandervall, a colored servant employed in defendant's apartment. With reference to this finding it appeared that the co-respondent and her husband remained over night at the defendant's apartment, which was occupied by himself and his son. They took breakfast in the apartment on the morning of the tenth, and then, according to the testimony of Dolly Vandervall, the defendant's son and the co-respondent's husband left, and after they had gone, she testified that she saw an act of adultery committed. She not only is not corroborated in her statement, but she is contradicted by the defendant, the co-respondent and her husband, all of whom testified that her statement was not true, but that the parties all left the apartment together. It is true that the defendant's son testified he left the apartment with the co-respondent's husband, but it is quite apparent that he is referring to some other occasion, because he stated that he left the co-respondent's little girl with her, and it seems to have been conceded by all of the parties that on the tenth of September the little girl was not present. She was not only contradicted by these witnesses, but she was also contradicted by two other witnesses. She testified that immediately following the occasion referred to she informed the elevator boy in the apartment of what she had seen, and also told the defendant's coachman, though she said nothing to her own husband on the subject. Both the elevator boy and the coachman testified positively that her statement was untrue. The circumstances, too, connected with or surrounding the parties at the time she claims to have seen them *in flagrante delicto*, were such as to justly bring her testimony under suspicion, if not to render it unworthy of belief. How she came to see them, where she stood, the location of the furniture in the room, as well as that in the room adjoining, do not naturally lead one to conclude that her statements were true. Evidence was given to the effect that the defendant and the co-respondent were apparently fond of each other and were much in each other's society, but this, in and of itself, was quite insufficient to justify the conclusion reached, nor was it sufficient to justify even an inference that they were guilty of any wrong. It must be remembered that the co-respondent is a relative of the defendant, and their families were, or had been for several years prior to the time the action was commenced, upon intimate social relations; that the association

between the defendant and the co-respondent was an open one; there was nothing secret about it; that whatever they did is just as capable of an innocent interpretation as a guilty one, and this being so, the court was obligated to adopt the former in preference to the latter. (*Pollock* v. *Pollock,* 71 N. Y. 137; *Conger* v. *Conger,* 82 id. 603.)

As I understand the law, where the evidence is capable of an interpretation which makes it equally consistent with the absence as with the presence of a wrongful act, then the court must adopt the former in preference to the latter. This rule was succinctly stated by Judge MARTIN in *Lopez* v. *Campbell* (163 N. Y. 348), where he said the existence of an act " can only be established by proof of such circumstances as are irreconcilable with any other theory than that the act was done." Applying this rule to the evidence in this case, it at once, as it seems to me, becomes apparent that it is wholly insufficient to sustain the findings upon which the judgment is based. It will not do to dissolve a marriage contract, or to injure the reputation of others not parties to it, upon the uncorroborated testimony of one witness, when such witness is contradicted by the defendant, the co-respondent, her husband and several other witnesses. There is more stability to such contracts than this, and a previously good character cannot be destroyed in this way by judicial decree.

There is, as already said, no evidence to sustain any of the findings, except the one relating to the tenth of September, and as to this it is so manifestly against the weight of evidence that it must, for this reason, be set aside. Mere suspicion that one is guilty of wrongdoing does not make it so, any more than suspicion constitutes evidence.

The conclusion thus reached renders it unnecessary to consider the other questions raised, and especially as to the errors alleged to have been committed in the exclusion of evidence, as the same questions may not be presented on another trial.

Judgment reversed; new trial ordered.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and LAUGHLIN, JJ., concurred.

Judgment reversed and new trial ordered.