(88 Misc. Rep. 674)

### TATUM v. TATUM.

(Supreme Court, Trial Term, Nassau County. January 25, 1915.)

1. NEW TRIAL (§ 72*)—VERDICT—SETTING ASIDE.
   Under Code Civ. Proc. §§ 999, 1003, relating to the setting aside of verdicts, the court cannot set aside a verdict unless without evidence to support it, or so decidedly against the weight of the evidence as to indicate partiality, corruption, or gross ignorance.
   [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 146–148; Dec. Dig. § 72.*]

2. DIVORCE (§ 129*)—EVIDENCE.
   Where the facts are as consistent with innocence as with guilt, a divorce will not be granted.
   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 411–441, 454; Dec. Dig. § 129.*]

3. DIVORCE (§ 129*)—ACTIONS—EVIDENCE.
   A verdict that the defendant wife had not been guilty of adultery *held* warranted under the evidence.
   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 411–441, 454; Dec. Dig. § 129.*]

Action by John C. Tatum against Mary J. Tatum. There was a verdict for defendant, and plaintiff moves to set it aside. Motion denied.

Olcott, Gruber, Bonynge & McManus, of New York City, for plaintiff.

Max D. Steuer, of New York City, for defendant.

CRANE, J. A motion has been made to set aside the verdict of the jury in favor of the defendant on the ground that it was contrary to the weight of evidence.

[1] The action of a jury in a case like this should not be lightly treated nor readily set aside. Before such a step is taken there should be very good and sufficient reasons. The questions of fact have been submitted to the jury for trial, and not to the court, and the jurors are so completely the judges of the facts that it would be improper for the court to express an opinion upon them, or in any manner to intimate what the finding should be.

So sacred has been this ancient right of trial by jury without interference by the court that in criminal cases there is no power to interfere with a verdict of "not guilty," no matter how outrageous or unfair it may be. When the defendant in a criminal case has once been declared not guilty by a jury, that ends the matter for all time, as there is no power in the court to set aside such a verdict, nor are the people given the right of appeal. This has been the law ever since we have had juries, and has worked so well that there seldom has been a suggestion of a change. When the freedom of speech and of the press was established in our fundamental law, it was very carefully guarded from improper restriction and interference by the courts, in that the jury, in prosecutions for criminal libel, was given the right to determine the law as well as the fact. Const. N. Y. art. 1, § 8; Code of Criminal Procedure, § 418.

In other cases the court is given the right to set aside the verdict of a jury when contrary to the evidence (sections 999 and 1003 of the Code of Civil Procedure); but this right has very marked limitations. Thus, for instance, it is no ground for setting aside the verdict that it is contrary to what the court would have decided upon the facts. There is no authority to substitute the opinion of the court for the judgment of the jury, or to say that proof persuasive with the court should have been convincing to the jury. Franklin Coal Co. v. Hicks, 46 App. Div. 441, 61 N. Y. Supp. 875. The finding of the jury must have been without evidence to support it, or so decidedly against the weight of evidence as to indicate partiality, corruption, or gross ignorance. When the evidence is conflicting, and in some respects flatly contradictory, but there is some evidence which, if fully credited, would support the finding of the jury, it does not lie with the court to gainsay the verdict. Every intendment must be made in favor of the verdict as the decision of a tribunal upon which the law devolves the special responsibility of determining the credibility of witnesses. It is not enough to set aside a verdict that there may have been a strong preponderance in favor of the defeated party. Hickinbottom v. D., L. & W. R. R. Co., 15 N. Y. St. Rep. 11. We must never forget that the jurors are to apply the law as given by the judge to the facts as they find them, and that the jurors are human agencies dealing not with theories, but with life as they find it about them. The personal equation can never be excluded from the jury box. Whatever criticism there may be of juries, experience has taught that in the long run and for an everyday working system 12 men are better able to determine facts than any individual judge. See Justice Miller in American Law Review, November, 1887.

[2] Upon the question of adultery, especially where it is attempted to be proved by circumstances, the evidence cannot be nicely weighed and adjusted and the result calculated. Logic is here out of place, as human life submits to no precise rule, and many times baffles reason; thus it is that many times appearances are deceitful, and that innocence may be surrounded by strange and inexplicable circumstances. The law, recognizing this, has given the following rule to be applied in cases charging adultery:

"Where the circumstances adduced in support of the charge are capable of two interpretations, one of which is consistent with innocence, a divorce should not be granted. Pollock v. Pollock, 71 N. Y. 137; Poillon v. Poillon, 78 App. Div. 127, 79 N. Y. Supp. 545; Smith v. Smith, 89 Hun, 610, 39 N. Y. Supp. 556.[1]

It is not sufficient, to establish adultery, that opportunity to commit the act alone appears, but there must also be evidence of an adulterous disposition upon the part of the defendant and the alleged paramour. 14 Cyc. 693.

[3] Bearing in mind the above rules of caution, is there evidence in this case, or such lack of evidence that a jury could reasonably arrive at the conclusion that the charge of adultery had not been

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 89 Hun, 610.

proven by a fair preponderance of evidence? The evidence divides itself into three classes: First, the conceded facts; second, the disputed facts; third, the denials of the defendant and Ottman.

First. As to the conceded facts: Mrs. Tatum and her husband were living at separate hotels in New York City. They were apparently upon very friendly terms, and no reason appears or is given why this separation should be. He went his way and she hers by mutual consent and without estrangement. Mrs. Tatum met Ottman at Coney Island, dined with him in New York, was visited by him at night in her apartment, 65 Central Park West, for which he paid in whole or in part for a few weeks or months. Later she rented a house at Roslyn, where she took up her abode, and was visited at week ends by Ottman, or by Ottman and his brother. There may have been other visits during the week. On one occasion he and she went to the Empire Hotel, where they took separate, but adjoining rooms, registering under their own names. The opportunity for the commission of adultery was abundant, but there is lacking any evidence of adulterous disposition; that is, there is no evidence of familiarity in conduct, such as hugging and kissing, or loose or lascivious acts, nor is there any evidence of the use of terms of endearment, or of love and affection. All these are generally found in cases where adultery is established by circumstantial evidence.

Ottman went to Nova Scotia upon the same steamer with Mrs. Tatum, and he was rigidly cross-examined as to his actions on the boat. Mrs. Tatum was, however, accompanied by Miss Chalmers, a young lady over 16, concededly friendly to Mr. Tatum. She was in the courtroom during the trial and the cross-examination of Ottman. She was not called by the plaintiff to contradict Ottman, or to testify to even so much as his attentions to Mrs. Tatum. This omission was decidedly marked, in view of the inference which the jury was asked to draw that Mrs. Tatum and Ottman had been unduly familiar upon this trip.

Second. As to the disputed evidence: If this class of evidence were believed by the jury, it was sufficient to establish adultery. But it was so discredited that, while I cannot say that the jurors were justified in throwing it out, yet they had reason for so doing if they chose to disbelieve it. The main testimony as to improper relationships was given by colored servants, Cora Slade and Ethel Bellamy, and by Elizabeth Seaman. Slade and Bellamy had made contradictory affidavits. They had both sworn previously to the very reverse of their testimony on the stand. Elizabeth Seaman admitted that she had advised another witness to ask $500 for testifying. The witness Harry MacFarland was contradicted by circumstances, by other witnesses, and had recently procured a position through the plaintiff's influence. The credibility of these witnesses was a matter peculiarly with the jury, and its conclusion to discredit the stories has matter and argument to support it.

Third. Mrs. Tatum and Ottman submitted to examination and cross-examination, and flatly contradicted having had any adulterous intercourse. There has never been a claim made by the plaintiff's attorneys that the jurors in this case were biased, prejudiced, or acted

from improper motives; the only ground pressed for a new trial being that the verdict is against the weight of evidence. In view of the importance which a verdict of a jury should have, and the limitations within which the court is justified in interfering therewith, I cannot say that the verdict for the defendant in this case is entirely against the weight of testimony, or shows partiality and a misconception of duty.

Motion for a new trial denied.