**Andrea MAGNUS, Alan Magnus, Charlotte Leavitt as the Administratix of the Estate of Frieda Chase, and Charlotte Leavitt individually, Plaintiffs,**

v.

**FORTUNE BRANDS, INC., f/k/a American Brands, Inc., The American Tobacco Company, Philip Morris Incorporated, Philip Morris Companies, Inc., Liggett Group, Inc., n/k/a Brooke Group, Ltd., Liggett & Myers Tobacco Company, Brown & Williamson Tobacco Corporation, Brown & Williamson Industries, Inc., individually and as successor by merger of Fortune Brands, Inc., f/k/a American Brands, Inc; and The American Tobacco Company; The tobacco Institute, Inc. and The Council for Tobacco Research–USA, Inc., Defendants.**

No. 98 cv 3441.

United States District Court,
E.D. New York.

March 18, 1999.

Law Offices of Sybil Shainwald, New York City, for plaintiffs.

Chadbourne & Parke, New York City, for defendants Fortune Brands, Inc., Brown & Williamson Industries, Inc., Brown & Williamson Tobacco Corp.

Winston & Strawn, New York City, for defendants Philip Morris, Inc., Philip Morris Companies, Inc.

Debevoise & Plimpton, New York City, for defendant Counsel for Tobacco Research.

Seward & Kissel, New York City, for defendant The Tobacco Institute, Inc.

Kasowitz, Benson, Torres & Friedman, New York City, for defendants Liggett Group, Inc., Liggett & Myers Tobacco Co.

### Memorandum and Order

GERSHON, District Judge.

Plaintiffs Andrea Magnus ("Magnus"), Alan Magnus and Charlotte Leavitt individually and as the administratrix of the estate of Frieda Chase ("Chase") bring an action against cigarette manufacturers, their current or former parent holding companies and two industry-related associations to recover damages for personal injuries allegedly suffered as a result of smoking cigarettes. Magnus suffers from cancer of the larynx, emphysema and/or other serious illnesses. Chase suffered from cancer of the throat, emphysema, and/or other serious illnesses before she died during the pendency of this action. Plaintiff Alan Magnus is Andrea Magnus's husband.

Defendants Liggett & Myers Tobacco Co., Brown & Williamson Tobacco Corporation ("Brown & Williamson"), Philip Morris Incorporated ("Philip Morris"), and the American Tobacco Company (collectively, the "Manufacturing Defendants") all manufacture or used to manufacture cigarettes.

Defendant Liggett Group, Ltd. is the parent of Liggett & Myers Tobacco Co. Defendant Philip Morris Companies, Inc. is the parent of Philip Morris. Defendant Brown & Williamson Industries, Inc. is the parent of Brown & Williamson. Defendant Fortune Brands, Inc. (formerly known as American Brands, Inc.) used to maintain the American Tobacco Company as a subsidiary until it sold the company to Brown & Williamson in 1995. None of these defendants (collectively, the "Corporate Parents") manufactures or distributes cigarettes.

Defendant Council for Tobacco Research, Inc. ("CTR") is a not-for-profit corporation that funds scientific research on tobacco use. Defendant Tobacco Institute,

Inc. ("TI") is a not-for-profit trade association.

Plaintiffs sue defendants, individually and as co-conspirators, aiders and abettors and concerted actors and allege: (1) failure to warn, (2) fraud and deceit, (3) negligent and defective design, (4) strict liability, (5) breach of an express warranty, and (6) breach of an implied warranty. Specifically, plaintiffs claim that defendants failed to warn that cigarette smoking causes cancer and is addictive; distributed deceptive information regarding the addictive nature of nicotine and the health risks of smoking cigarettes; and intentionally controlled and continue to control the levels of nicotine in cigarettes to maintain and maximize their addictive effect.

Plaintiffs' motion to amend the complaint to add additional factual allegations is granted. For the reasons set forth below, defendants' motion to partially dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(6)(6) [1] is granted in part and denied in part.

## DISCUSSION

When exercising diversity jurisdiction, a district court applies the choice of law rules of the state in which it sits in order to determine which state's law is applicable to the matter before the court. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). "[U]nder New York conflicts principles, controlling effect is accorded to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation." *David Tunick, Inc. v. E.W. Kornfeld*, 813 F.Supp. 988, 994 (S.D.N.Y.1993) (quotations and citations omitted). Where, as here, conduct regulating laws are at issue, and the parties are domiciled in different states, the place of injury is generally the determining factor. *See Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 74, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993).

Plaintiffs allege that Magnus is a resident of New Jersey and that her exposure to defendants' products and her illnesses occurred in New Jersey. Thus, defendants agree that Magnus's claims are governed by New Jersey law. Plaintiffs further allege that Chase was a resident of Maine and that her exposure to defendants' products and her resulting illnesses occurred in Maine. Defendants, however, do not agree that Leavitt's claims as the administratrix of Chase's estate are governed by Maine law. Nonetheless, they offer no ground for applying the law of any other state. Therefore, Maine law will be applied here.

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss, the court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995), *quoting Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). A motion is dismiss "is addressed solely to the face of the pleadings, and '[t]he court's function ... is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'" *Tinlee Enterprises, Inc. v. Aetna Casualty & Surety Co.*, 834 F.Supp. 605, 607 (E.D.N.Y.1993) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985)).

### Claims for Failure to Warn, Fraud and Deceit, and Implied Warranty

Plaintiffs' claims for failure to warn, fraud and deceit, and breach of an implied warranty of merchantability contain allega-

1.  Defendants Liggett & Myers Tobacco Company and Liggett Group, Inc. (now known as Brooke Group, Ltd.) do not join in this motion to dismiss.

tions that defendants concealed the risks of smoking and addiction from their customers, advertised cigarettes as safe for consumption, and implicitly promised that their cigarettes were merchantable and fit for ordinary use. Defendants argue that the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331 *et seq.* (the "Labeling Act") preempts these claims as a matter of law to the extent that they are based on alleged conduct occurring after 1969.

▪ The Labeling Act mandates uniform warning labels on packages of cigarettes. The purpose of the Labeling Act is to adequately inform the public of the dangers of cigarette smoking while simultaneously protecting commerce and the national economy. *See* 15 U.S.C. § 1331. The Labeling Act at 15 U.S.C. § 1334(b) also contains an express preemption provision, which reads:

> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

▪ Relying on the language of Section 1334(b), the Supreme Court in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 522–31, 112 S.Ct. 2608, 120 L.Ed.2d 407(1992), held that the Labeling Act preempts state common law claims based on a failure to warn and the neutralization of federally mandated warnings to the extent that those claims rely on omissions or inclusions in advertising or promotion. Cipollone, who suffered from lung cancer, sued several cigarette manufacturers for breach of warranties, failure to warn, fraudulent misrepresentation and conspiracy. The dispositive issue before the Court was whether Section 1334(b) was intended solely to prohibit the enactment of state statutes mandating additional warnings or whether it was also intended to prohibit lawsuits based on common law claims. A four-justice plurality held that

The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules. As we noted in another context '[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.' *Id.* at 521, 112 S.Ct. 2608 (Scalia and Thomas, JJ., concurring in relevant part).

In an attempt to "fairly" but "narrowly" construe the language of Section 1334(b), the Court devised the following test for determining whether a common law claim is preempted pursuant to the statute: Preemption is required whenever the predicate legal duty underlying the claim constitutes a(1) requirement or prohibition, (2) based on smoking and health, (3) imposed under state law, (4) with respect to the advertising or promotion of cigarettes. *Id.* at 524, 112 S.Ct. 2608 (Scalia and Thomas, JJ., concurring in relevant part).

In accordance with this standard, the Court held that Cipollone's failure to warn claims were preempted to the extent that they relied on allegations that defendants' post–1969 advertising failed to warn the public of the risks of cigarette smoking, but that they survived to the extent that they relied on defendants' testing and research practices or other actions unrelated to advertising. The Court further held that Cipollone's fraudulent concealment claim was not preempted to the extent it relied on the duty to disclose facts through channels of communication other than advertising or promotion, and that Cipollone's fraudulent misrepresentation claim based on allegations of actively deceptive advertising was not preempted because it was predicated on a duty not to deceive. *Id.* at 528–29, 112 S.Ct. 2608 (Blackmun, Kennedy, and Souter, JJ., concurring in

relevant part). Finally, the Court held that Cipollone's express warranty claim was not preempted because the defendants' potential liability for breach of an express warranty derived from the terms of the warranty rather than from state law. *Id.* at 525–36, 112 S.Ct. 2608.

■ Plaintiffs' failure to warn claim in this case is based in part on allegations that defendants failed to notify the public of the health risks of smoking cigarettes and in part on allegations that defendants voluntarily assumed a special duty to protect the public by providing information about the effects of tobacco use. Plaintiffs' claim is preempted under *Cipollone* to the extent it alleges a failure to provide additional warnings post–1969, but it survives to the extent it alleges a breach of defendants' special duty because, as with an express warranty, the predicate duty is imposed not by the State but by the party assuming the obligation. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 7 F.Supp.2d 277, 292–93 (S.D.N.Y.1998) (declining to dismiss failure to warn claim based on assumption of a special duty). *Cf. Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168, 171 (5th Cir.), *cert. denied,* 519 U.S. 930, 117 S.Ct. 300, 136 L.Ed.2d 218 (1996) (dismissing fraudu-

lent concealment and failure to warn claims); *Ferrone v. Brown and Williamson Tobacco Corp.,* 1998 WL 846783 * 5 (E.D.N.Y.); *Lacey v. Lorillard Tobacco Co., Inc.,* 956 F.Supp. 956, 962 (N.D.Ala. 1997) (dismissing fraudulent suppression claim); *Griesenbeck v. American Tobacco Co.,* 897 F.Supp. 815, 823 (D.N.J.1995) (dismissing failure to warn claim).

■ Plaintiffs' fraud and deceit claim includes allegations that defendants issued deceptive press releases, reports and advertisements through TI and that they made material misrepresentations to the federal government and the public regarding the nature and composition of cigarettes. Since plaintiffs' claim relies on allegations that defendants actively disseminated deceptive information, it is predicated on a duty not to deceive rather than a duty "based on smoking and health," and it, too, survives under *Cipollone*. *See Laborers Local 17 Health & Benefit Fund,* 7 F.Supp.2d at 291–92 (declining to dismiss fraudulent misrepresentation claim); *Lacey,* 956 F.Supp. at 962 (distinguishing between allegations that defendants made misrepresentations and allegations that defendants should have provided more information).[2]

---

2. Defendants suggested during oral argument that, even if plaintiffs' fraud and deceit claim survives the Labeling Act, it should nevertheless be dismissed because it is not pled with sufficient particularity. Rule 9(b) of the Federal Rules of Civil Procedure provides that "in all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The particularity requirement of the Rule is designed "(1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). In order to meet the requirements of Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements

were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993).

In support of their fraud claim, plaintiffs allege that, "[d]uring their appearance before Congress on April 14, 1994, the chief executives of each of the Tobacco Companies testified that their companies do not manipulate nicotine levels in or otherwise add nicotine to their cigarettes to create or sustain addiction to their products." Exhibit B, ¶ 159. Plaintiffs further allege that, in 1983, "Sheldom Sommers, M.D., scientific director of CTR, testified before Congress that '[c]igarette smoking has not been scientifically established to be a cause of chronic diseases, such as cancer, cardiovascular disease, of emphysema'"; that, in 1994, Philip Morris advertised that it did not manipulate nicotine levels; and that, that same year, Brown & Williamson issued a press release to the same effect. Exhibit B, ¶ 286(4) and (6). Since these allegations specify the alleged fraudulent statements, identify the speakers, and

Plaintiffs' breach of an implied warranty claim also survives because it is based, not on defendants' failure to warn, but rather on specific allegations that defendants knowingly designed, manufactured and distributed a product which they knew was both carcinogenic and addictive and, thus, not fit for the ordinary purpose for which it was intended. *Cf. Geiger, et. al. v. American Tobacco Co. et. al.*, 252 A.D.2d 474, 674 N.Y.S.2d 775 (2d Dep't 1998) (dismissing breach of implied warranty claim insofar as it was "based on a failure to warn, or on the neutralization through advertising of Federally-mandated warnings").

## Claims against the Corporate Parents

Plaintiffs have brought claims against the Corporate Parents for failure to warn and strict products liability. Since none of the Corporate Parents manufactures or distributes cigarettes, they do not have an independent duty either to warn plaintiffs of the risks of smoking cigarettes or to create and promote a product that is not unreasonably dangerous. Plaintiffs therefore seek to "pierce the corporate veil" and to impose liability on the Corporate Parents for the conduct of their subsidiaries.

In New Jersey, courts may pierce the corporate veil upon a finding that (1) "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent" and that (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." *State, Dept. of Environmental Protection v. Ventron Corp., et al.*, 94 N.J. 473, 468 A.2d 150, 164 (1983). Similarly, in Maine,

the corporate entity may be pierced "if it is merely the alter ego of an individual or other corporation," *Theberge v. Darbro, Inc.*, 684 A.2d 1298, 1301 (Me.1996), and "[t]he corporate entity will be disregarded when used to cover fraud or illegality." *Bonnar–Vawter, Inc. v. Johnson*, 157 Me. 380, 173 A.2d 141, 145 (1961).

Plaintiffs allege that the Corporate Parents "exercis[ed] domination and control over the day-to-day operations and business" of the Manufacturing Defendants. Plaintiffs also allege that the Corporate Parents (1) engaged in a conspiracy to manipulate research data and to assist the Manufacturing Defendants in defrauding the public; (2) acted in concert with the manufacturers as they directed and controlled the design, production, marketing, advertising and sale of cigarettes; (3) spent billions of dollars to "buy science" so they could perpetuate industry wide pro-tobacco propaganda; and (4) sponsored cigarette ads in medical journals during the 1930s and 1940s.

Defendants argue that plaintiffs' complaint is insufficient because it relies solely on a legal conclusion that the Corporate Parents dominated and controlled the Manufacturing Defendants without alleging specific facts to support how the domination was accomplished or how it was used to commit a fraud or wrong. Defendants rely principally on New York law and can point to no requirement either in Maine or New Jersey that requires more specificity than that provided.[3] Defendants' motion fails under Rule 12(b)(6). Defendants' alternative argument, that Rule 9(b) of the Federal Rules of Civil Procedure, which requires specificity in

state where and when the statements were made, plaintiffs' fraud and deceit claim is pled with sufficient particularity to satisfy the requirements under Rule 9(b).

**3.** Defendants cite a New Jersey case dismissing an action on a motion for summary judgment on the basis that the plaintiffs failed to provide sufficient proof to pierce the corporate veil. *See McKee v. Harris–Seybold Co.*

*Division of Harris–Intertype Corp.*, 109 N.J.Super. 555, 264 A.2d 98, 108 (1970), overruled on other grounds, *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811 (1981) ("The allegation that it was the movant's 'alter ego' is a mere legal conclusion and suffers from the same lack of proof required to pierce the corporate veil."). *McKee*, of course, is not authoritative on a pleading motion such as this.

the pleading of fraud claims, applies to the alter ego claim, is rejected. Here, as in *Rolls–Royce Motor Cars, Inc. v. Schudroff,* 929 F.Supp. 117, 122 (S.D.N.Y.1996), plaintiff may be able to pierce the corporate veil by proving a non-fraudulent "wrong" attributable to the defendants' domination of their subsidiaries. *Accord Old Republic Insurance Co. v. Hansa World Cargo Service, Inc.,* 170 F.R.D. 361, 375 (S.D.N.Y. 1997).

### Claims Against CTR and TI

■ Plaintiffs allege that CTR and TI acted as agents for the Manufacturing Defendants and that the Manufacturing Defendants utilized scientific research funded by CTR to design their cigarettes. Defendants argue that plaintiffs' claims against CTR and TI should be dismissed because neither defendant manufactures cigarettes, and plaintiffs have not pled any factual allegations to support their conclusion that CTR and TI caused their injuries, nor have they identified any research done by or on behalf of CTR that was used by a manufacturer.

■ In both Maine and New Jersey, liability for injuries caused by a defective product is not imposed on a party that does not manufacture or sell the product. *See, e.g., Stanley v. Schiavi Mobile Homes, Inc.,* 462 A.2d 1144, 1147 (Me.1983); *Zaza v. Marquess and Nell, Inc.,* 144 N.J. 34, 675 A.2d 620, 627 (1996). Since the complaint does not allege that CTR or TI manufactured or sold cigarettes, CTR and TI cannot be held liable for failure to warn, negligent and defective design, strict products liability.

■ Plaintiffs' fraud claim survives, however, because it does not require proof of manufacture or distribution. A claim for fraud is based on the distribution of false information—in this case false information regarding a defective product—not on the distribution of the product itself. *See Harkness v. Fitzgerald,* 701 A.2d 370, 372 (Me.1997); *United Jersey Bank v.*

*Kensey,* 306 N.J.Super. 540, 704 A.2d 38, 43 (1997).

### The Magnuses' Claims for Failure to Warn, Fraud, Negligence, Strict Liability and Implied Warranty

■ Defendants argue that the Magnuses' claims for failure to warn, fraud, negligence and defective design, strict liability and implied warranty should be dismissed because the New Jersey Product Liability Act (NJPLA) provides the exclusive remedy in products liability actions. Section 2A:58C–2 of the NJPLA provides:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable, or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

A "product liability action" is defined as "any claim or action brought by a claimant for harm caused by a product, *irrespective of the theory underlying the claim,* except actions for harm caused by breach of an express warranty." NJPLA § 2A:58C–1(b)(3) (emphasis added). "Harm" is defined as: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." NJPLA § 2A:58C–1(b)(2).

The "Legislative findings" in Section 2A:58C–1(a) state that "[t]his act is not intended to codify all issues relating to product liability, but only to deal with matters that require clarification. The Legis-

lature further finds that such sponsors' or committee statements that may be adopted or included in the legislative history of this act shall be consulted in the interpretation and construction of this act." An Assembly Insurance Committee Statement dated June 22, 1987, states: "[C]ertain provisions of the act simply codify the existing common law of the State, which should continue to apply in pending cases as well as new cases." And a Senate Judiciary Committee Statement dated November 17, 1986, explains:

> Subsection a. of section 1 identifies the theories under which a manufacturer or seller may be held liable for harm caused by a product. These comprise manufacturing defects, warning defects, and design defects. Except as modified by the provisions of sections1, the elements of these causes of action are to be determined according to the existing common law of the State.

The Supreme Court of New Jersey has not expressly stated whether, as a matter of pleading, a product liability claim should be labeled as brought under the NJPLA rather than under the common law. In *Alloway v. General Marine Industries, L.P.*, 149 N.J. 620, 695 A.2d 264, 274 (N.J. 1997), however, the Court implied that the NJPLA is not intended to subsume all common law claims:

> "In addition to the right to recover under the U.C.C., victims of fraud or unconscionable conduct possess substantial rights to recover for common-law fraud or for violations of various state and federal statutes. The U.C.C. expressly provides that '[u]nless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy or other validating or invalidating cause shall supplement its provisions.' *The New Jersey Products Liability Law (the 'Law') is to the same effect.* Although

the Law excludes physical damage to the product itself from the definition of 'harm,' the Legislature did not intend to codify in the Law all common-law remedies. Consequently, the exclusion of physical damage from harm that falls within the Law is not dispositive." (citations omitted) (emphasis added).

The Court has also noted that the common law will continue to govern on issues not covered by the NJPLA. *See Zaza v. Marquess and Nell, Inc.*, 144 N.J. 34, 48, 675 A.2d 620 (1996). Other courts had stated that the NJPLA created a new cause of action replacing all common law remedies. *See Repola v. Morbark Industries, Inc.*, 934 F.2d 483, 492 (3d Cir.1991) ("We ... predict that the New Jersey Supreme Court would hold that the NJPLA generally subsumes common law products liability claims, thus establishing itself as the sole basis of relief under New Jersey law available to consumers injured by a defective product."); *Tirrell v. Navistar International, Inc.*, 248 N.J.Super. 390, 591 A.2d 643, 647 (1991) (NJPLA "established the sole method to prosecute a product liability action").

In my view, as a matter of pleading, the presence of the NJPLA does not require the dismissal of claims labeled as brought under the common law unless, on the facts alleged, the plaintiff cannot state a claim under all applicable law including the NJPLA. Here, plaintiff acknowledges that the NJPLA is applicable to her claim, and defendants do not argue that plaintiff cannot state a claim. Under these circumstances, there is no basis for dismissing Magnus's common law claims.

■ Assuming *arguendo* that the NJPLA does subsume all common law claims to which it is applicable, Magnus's claims would still survive, albeit under the NJPLA. Rule 8(a) of the Federal Rules of Civil Procedure requires that pleadings contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the Rule is to provide a defendant with fair notice of a

plaintiff's claim so that the defendant may answer the complaint and prepare for trial. *See Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). Since the nature of and factual circumstances surrounding Magnus's New Jersey claims are clear, the pleadings satisfy the notice requirement under Rule 8(a), notwithstanding plaintiffs' failure to mention the NJPLA in the complaint.

### Leavitt's Claim against Philip Morris

Plaintiffs concede that Leavitt's decedent, Frieda Chase never smoked Philip Morris brand cigarettes, and they stipulate to dismiss without prejudice Leavitt's claims against Philip Morris and Philip Morris Companies for failure to warn and strict liability. Plaintiffs, however, do not stipulate to dismiss Leavitt's remaining claims against the Philip Morris defendants. Plaintiffs' position is untenable. Since Chase never smoked Philip Morris products, there can be no causal link between Chase's injuries and defendant's actions, and all of Leavitt's claims against Philip Morris must be dismissed. *See Pottle v. Up–Right, Inc.,* 628 A.2d 672, 675 (Me.1993) (requiring causation in a products liability case).

### CONCLUSION

Defendants' motion to dismiss plaintiffs' claims against CTR and TI for negligent and defective design, strict liability, and breach of express and implied warranties is granted. Defendants' motion to dismiss plaintiffs' failure to warn claim is granted to the extent it alleges a failure to provide additional warnings post–1969. In all other respects, defendants' motion is denied.

**SO ORDERED.**