Barbara IZZARELLI,

v.

**R.J. REYNOLDS TOBACCO CO.**

No. 399CV2338 (AHN).

United States District Court,
D. Connecticut.

Aug. 29, 2000.

David Golub, Stamford, CT, for plaintiff.

Edward Hennessey, Stamford, CT, for defendant.

## RULING ON MOTION TO DISMISS

NEVAS, District Judge.

The plaintiff, Barbara Izzarelli ("Izzarelli"), brings this action against the R.J. Reynolds Tobacco Co. ("Reynolds") under the Connecticut Products Liability Act, Conn.Gen.Stat. § 52–572 et seq. ("PLA") and the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110b et seq. ("CUTPA"). She alleges that she suffered personal injuries as a result of her addiction to Salem cigarettes and sustained economic losses as a result of Reynolds's unfair and deceptive acts and practices in the marketing of its products.

Now pending is Reynolds's motion to dismiss the complaint [doc. # 19]. For the following reasons, the motion is DENIED.

### FACTS

The following facts as alleged in the amended complaint[1] are accepted as true for purposes of this motion to dismiss.

Izzarelli was born in 1960. She started smoking Salem cigarettes in 1974, when she was fourteen years old. She continued to smoke until 1997, when she developed laryngeal cancer as a result of her addiction to Salem cigarettes. She underwent a total laryngectomy to remove the cancer and thereafter received radiation therapy.

Salem cigarettes are manufactured and distributed by Reynolds.

In count one, the product liability claim, Izzarelli alleges that Reynolds designed, manufactured and distributed defective and unreasonably dangerous Salem cigarettes in that, when used as intended, they caused laryngeal and other types of cancer and other diseases and were addictive, especially to minors. She contends that Reynolds knew of the defective and unreasonably dangerous nature of the cigarettes, and intentionally designed and manufactured them to enhance their addictive nature. She also alleges that Reynolds failed and refused to implement design changes in their cigarettes that would have reduced their addictive and harmful nature.

In the CUTPA claim, Izzarelli asserts that, beginning as early as the 1950's and continuing through 1998, Reynolds adopted a deliberate marketing strategy for its addictive cigarettes that targeted children and adolescents to attract them to begin smoking and to induce them to continue smoking so that it could develop a long-term base of consumers. She alleges that as a result of this conduct she began purchasing and smoking Salem cigarettes and became addicted to them.

Izzarelli further asserts that Reynolds, individually and in concert with other cigarette companies, in or about 1954, entered into a wrongful scheme to defraud the American public into believing that the health and addictive nature of cigarettes had not been established. This scheme was adopted even though Reynolds and other cigarette manufacturers knew that no such scientific controversy existed. The purpose of this scheme was to enable Reynolds to establish and maintain a long-

---

1. At oral argument, in response to the court's concerns as to the sufficiency of the CUTPA allegations pertaining to fraudulent concealment, causation and Reynolds's wrongful conduct, the plaintiff agreed to file an amended complaint. The amended complaint was filed on August 18, 2000. The court will consider the allegations in the amended complaint when addressing Reynolds's Rule 12(b)(6) claims.

term base of addicted smokers and to conceal its liability for injuries caused by smoking. The scheme continued through 1998.

In furtherance of this scheme, which was referred to as the "Open Question" strategy, Reynolds and its coconspirators made fraudulent statements about the health hazards and addictive nature of cigarettes, their knowledge of such health hazards and addictiveness, and their manipulation of the nicotine in cigarettes to increase their addictiveness. In addition, Reynolds and the other cigarette manufacturers created and funded the Tobacco Institute, a trade association that intentionally issued statements falsely maintaining that there was a bona fide scientific controversy concerning the harmful nature of cigarettes and whether they caused cancer. They also created and funded the Tobacco Industry Research Committee (later renamed the Council for Tobacco Research–USA) and falsely represented that it would undertake independent research and a full investigation into the health hazards of smoking, and disclose fully the results of such research and investigation. Reynolds also falsely represented that it and the other cigarette manufacturers would investigate and disclose any health hazards of cigarettes even though it did not intend to do so and did not do so. Reynolds also represented that, if it was ever determined that any component found in cigarettes caused or contributed to disease, it would remove that component(s), even though it knew of the existence of disease-causing components and did not intend to or attempt to remove them.

Beginning before 1973 and continuing until at least 1998, Reynolds made, directly or indirectly, material false and misleading statements including: it would lead an effort to discover and disclose the truth about the health effects of tobacco; the use of tobacco has not been proven to cause or exacerbate diseases; it did not believe its products were harmful; nicotine was not addictive; and that it did not manipulate the nicotine in tobacco products. Other U.S. cigarette manufacturers, with the knowledge and approval of Reynolds, issued similar false statements. Reynolds knew that these representations were false, but deliberately issued them as part of its continuing course of conduct to induce the public to begin and continue purchasing its products and to maintain a market for its products. Moreover, these statements were made even though Reynolds knew from its own studies and information available to it, as early as 1953, of the link between tobacco use and human disease, including cancer.

In addition, by 1972, Reynolds knew of the addictive properties of the nicotine contained in its tobacco products. Reynolds also knew that new smokers did not know of the effects of nicotine and exploited their lack of knowledge to induce them to begin smoking and continue purchasing cigarettes. In furtherance of this goal, Reynolds deliberately controlled or manipulated the level of nicotine in its products. Reynolds recognized that it had to misrepresent the addictive quality of nicotine and manipulate the level of nicotine so that the acceptability of its cigarettes could be maintained in the face of increasing warnings about the health hazards of smoking. It also did so in an effort to avoid liability for injuries caused to addictive smokers, because it was warned by its attorneys as early as 1980, that it could not defend continued smoking as free choice if the consumer was addicted.

Reynolds was aware that it was critical to its Open Question strategy that all tobacco companies act together to misrepresent the true nature of the research concerning the health risks of tobacco, the addictiveness of nicotine and their manipulation of the nicotine in their products. This was so because the conspiracy could only succeed if all of the conspirators maintained the truth of their misrepresentations. In furtherance of this conspiracy, the tobacco companies agreed not to conduct any in-house research to study the

relationship between smoking and disease, and in 1970, Reynolds disbanded its research division.

Reynolds's misrepresentations about the health hazards of smoking and its illegal youth marketing activities were also intended to affect consumers' decisions to buy tobacco products and thereby affecting the price of those products. Reynolds unfairly and deceptively maintained the price of its tobacco products at an inflated level.

These deliberate misrepresentations and deceptive representations and actions were likely to and did cause consumers, including minors to begin and/or continue to smoke and become addicted to cigarettes, and to mislead them as to the adverse health consequences of tobacco products and the addictive nature of nicotine.

## STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Still v. DeBuono,* 101 F.3d 888 (2d Cir.1996). Thus, dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104

S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). In deciding such a motion, consideration is limited to the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

## DISCUSSION

Reynolds moves to dismiss the complaint in its entirety. It asserts that Izzarelli's CUTPA claim is barred by the exclusivity provision of the PLA, that both her CUTPA claim and her PLA claim are preempted by the federal Cigarette Labeling & Advertising Act, that the CUTPA claim is insufficiently pleaded and, in so much as the CUTPA claim is based on youth marketing, it is barred by the statute of limitations.[2]

### I. Exclusivity of PLA Claim

Reynolds contends that the CUTPA claim must be dismissed because the PLA is Izzarelli's exclusive remedy.[3] It argues that Izzarelli is attempting to sidestep the PLA's exclusivity by artificially splitting her claim into two separate but functionally equivalent causes of action. It maintains that the CUTPA claim is simply a thinly-veiled PLA claim because the wrongs asserted in both causes of action are impliedly based on failure to warn and fraudulent concealment, and she seeks the same relief, economic damages, in each

---

**2.** Reynolds also moved to dismiss Izzarelli's claim for attorney's fees and costs under the PLA on the ground that it was premature. Izzarelli has agreed to withdraw this claim. Accordingly, Reynolds motion to dismiss this claim is denied as moot.

**3.** The exclusivity provision of the PLA, § 52–272n, provides that "[a] product liability claim [under Connecticut statutes] may be asserted and shall be in lieu of all other claims against the product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product."

count. Thus, it contends that the two claims are coextensive and that the CUTPA claim is redundant.

In opposition, Izzarelli maintains that Reynolds mischaracterizes and distorts the nature of her allegations to support its argument. She says that she is not alleging failure to warn or fraudulent concealment in either the CUTPA or PLA claim. To the contrary, she asserts that her product liability claim alleges that Reynolds designed, manufactured and distributed a product that is defective and unreasonably dangerous, and the CUTPA claim alleges that Reynolds, individually and in concert with other tobacco companies, engaged in an illegal and fraudulent scheme to create a long-term base of addicted smokers who would purchase its products. She maintains that the harm caused by the unethical and unscrupulous business practices alleged in the CUTPA claim is wholly distinct from the harm caused by the defective and dangerous product alleged under the PLA. She also asserts that the two claims are separate and distinct because the relief in the PLA claim, damages for personal injuries, is not the same as the consumer-based remedies she seeks under CUTPA, and that this type of remedy is not available under the PLA.

Neither the Connecticut Appellate Court nor the Connecticut Supreme Court has ruled on the issue of whether the PLA encompass or preempts CUTPA claims. The trial courts that have considered the issue are divided.

Among the reasons given in the decisions in which the two causes of action are not found to be coextensive is that the two statutes are designed to remedy similar, but distinctly different wrongs: the PLA was enacted to prevent the sale of defective products, while CUTPA was enacted to prevent unfair and deceptive business practices. *See Touchette v. Smith,* No. CV910520651, 1993 WL 410112 (Ct.Super. Oct. 5, 1993). Another reason is that, in enacting the PLA's exclusivity provision, the legislature did not intend to affect CUTPA or other consumer protection laws. Rather, according to the legislative history of the PLA, the exclusivity language was intended to merge the different theories of strict liability, breach of warranty, negligence and breach of contract into one statutory cause of action for injuries caused by defective products. *See* 1979 Conn.Sen.Proc., Vol. 22, Pt. 14 at 4636–37, 4639 (remarks of Sen. De. Piano). As one State Senator noted, the exclusivity provision was "not intended to affect other state statutory schemes such as … the state unfair trade practices act." *Id.; see also Gaetano v. Reich,* No. CV970142920S, 1998 WL 128922 (Conn.Super. March 11, 1998).

Some courts have presumed that the legislature did not intend to preclude the joining of a CUTPA claim with a PLA claim because the PLA was adopted after CUTPA was enacted and the PLA does not expressly preclude a CUTPA claim. *See Gaetano v. Reich,* 1998 WL 128922 at *2 (noting that canons of statutory construction require courts to presume that laws are enacted in view of existing statutes and that the legislature created a consistent body of law); *see also Priest v. Mattress Wholesalers,* No. CV970143424, 1998 WL 323438 (Conn.Super. June 12, 1998).

The courts that have not allowed a CUTPA claim to be joined with a PLA claim have read the PLA's exclusivity provision as strictly precluding all other causes of action. *See, e.g., Hoboken Wood Flooring Corp. v. Torrington Supply Co.,* 42 Conn. Supp. 153, 156, 606 A.2d 1006 (1991); *see also, Convention of Episcopal Diocese of Conn. v. Minwax Co.,* No. CV94534705, 1994 WL 149271 (Conn.Super. Apr.4, 1994) (holding that a claim of misrepresentation is simply one facet of a products liability claim).

Many courts, even those that have held that the two claims are coextensive, have applied the "functional equivalent test" that was first proposed by this court in

*West Haven School Dist. v. Owens–Corning Fiberglas Corp.,* No. H–85–1056, 1988 WL 250851 (D.Conn. July 21, 1988). Under this test, the court determines if the CUTPA claim and the PLA claim assert the same wrongs and seek the same relief. If the two claims are essentially identical, then the CUTPA claim comes within the scope of the PLA and is precluded. *See Utica Mut. Ins. Co. v. Denwat Corp.,* 778 F.Supp. 592, 596–98 (D.Conn.1991) (Clarie, J.); *Niewinski v. Hemlock Hill R.V.,* No. CV9774906, 1998 WL 27837 (Conn.Super. Jan.15, 1998); *Mencio v. Rich,* No. CV91139051, 1998 WL 165067 (Conn.Super. Apr.2, 1998); *Christensen v. Water & Air, Inc.,* No. CV9765366, 1998 WL 131608 (Conn.Super. Mar.16, 1998).

Because of the unsettled state of the law on this issue, a judge of this court recently certified it to the Connecticut Supreme Court. *See Gerrity v. R.J. Reynolds,* 3:99cv1329(DJS). Accordingly, the court will not decide this issue until the Connecticut Supreme Court acts on the Request for Certification in *Gerrity.* Reynolds's motion to dismiss the CUTPA claim on the ground that the PLA claim is Izzarelli's exclusive remedy is thus denied without prejudice to renewal after the Connecticut Supreme Court answers the certified question.

## II. *Preemption by the Federal Labeling Act*

Reynolds also contends that Izzarelli's claims are preempted by the federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331 to 1340 (the "Labeling Act"), because her core claim is that Reynolds failed to warn of the alleged health effects of smoking.[4] Reynolds bases this argument on the Supreme Court decision *Cipollone v. Liggett Group, Inc.,* 505 U.S.

504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), which held that tort claims based on a failure to disclose information regarding smoking and health in advertising and promotion are preempted by the Labeling Act regardless of whether they are couched as failure to warn, fraudulent concealment, negligence, strict liability or any state statutory cause of action. Reynolds contends that the court should look beyond the descriptive label Izzarelli attaches to her claims to determine whether they are based on a duty to provide consumers more information regarding smoking and health. If so, then they are preempted. *See Lacey v. Lorillard Tobacco Co.,* 956 F.Supp. 956, 963 (N.D.Ala.1997).

Reynolds relies on a few recent federal cases that have dismissed claims against cigarette manufacturers as preempted by the Labeling Act. In *Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168, 171 (5th Cir.1996), the court dismissed the claims of an addicted smoker who alleged that the defendant discovered the health risks of tobacco and fraudulently concealed that information from the public. The court held that, to the extent the claims were based on fraudulent concealment or failure to warn, they were preempted. Similarly, in *Smith v. Brown & Williamson Tobacco Corp.,* No. 96–0459–cv–W–3, Slip. Op. (W.D.Mo. Jan. 29, 1999), the court held that claims alleging a failure to make additional statements to the consuming public are preempted.

These cases would only support Reynolds's argument if Izzarelli's claims were based on a duty arising out of smoking and health. However, contrary to Reynolds's claim, the court does not find that Izzarelli's claims are based on any duty which the Court found to require preemption under the Labeling Act in *Cipollone.*

---

**4.** The Federal Cigarette Labeling and Advertising Act, as amended by the Public Health Cigarette Smoking Act of 1969, requires that a warning such as "The Surgeon General Has Determined That Cigarette Smoking Is Dangerous To Your Health" must appear in a conspicuous place on every package of cigarettes sold in the United States. Section 5 of the act provides: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising and promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act."

In *Cipollone*, the Court held that only claims based on advertising and promotion are preempted if they are predicated on a duty arising out of smoking and health. *See id.* 505 U.S. at 519–20, 530, 112 S.Ct. 2608. *Cipollone* made it clear that "state-law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes" are not subject to preemption because they do not involve advertising or promotion of cigarettes. *See id.* at 523, 112 S.Ct. 2608. In addition, *Cipollone* ruled that failure to warn cases were not preempted if they were based on claimed inadequacies in testing or research practices or other actions unrelated to advertising and promotion. Indeed, in *Cipollone*, the Court carefully considered fraudulent misrepresentation claims and carefully distinguished those that were, and those that were not, allowed. It held that claims of fraudulent misrepresentation and concealment based on a state law duty to disclose facts through channels other than advertising and promotion are not preempted.

Moreover, under *Cipollone*, claims of intentional fraud are not preempted even if the statements are made in advertising and promotion because they would not be predicated on a duty based on smoking and health, but on a more general duty not to deceive. *See Cipollone*, 505 U.S. at 528–29, 112 S.Ct. 2608. The Court expressly noted that, in enacting the Labeling Act, Congress did not intend "to insulate cigarette manufacturers from longstanding rules governing fraud." *Id.*

■ Clearly under *Cipollone*, the Labeling Act does not preempt Izzarelli's common law claims because the predicate legal duties on which her claims are based do not constitute a requirement or prohibition based on smoking and health imposed under State law with respect to advertising or promotion, giving that clause a fair but narrow reading. *See id.* at 528–29, 112 S.Ct. 2608. Izzarelli does not allege that

Reynolds's advertising and promotions should have included additional or more clearly stated warnings. Nor does she allege a fraudulent misrepresentation claim that Reynolds's advertising neutralized or minimized the health hazards of smoking. Rather, her claims are based on false representations and concealments of material fact. As such, they are not preempted, even if they were made in advertising or promotion. This is because the predicate duty in such a claim is a state law duty not to deceive, not a duty based on smoking and health. *See id.* at 529, 112 S.Ct. 2608.

■ Similarly, a claim of conspiracy to conceal or misrepresent the health hazards of smoking, which is predicated on a duty not to conspire to commit fraud, is not preempted. *See id.* at 530, 112 S.Ct. 2608. Nor is a claim of breach of warranty based on statements made in the manufacturer's advertising, because the common law remedy for a contractual commitment should not be regarded as a requirement imposed by State law. *See id.* at 525, 112 S.Ct. 2608.

■ In sum, none of Izzarelli's claims are preempted under the Labeling Act because they are not based on a failure to warn or neutralization of federally mandated warnings. *See id.* at 531, 112 S.Ct. 2608. Her PLA claim is based on the defective nature of Reynolds's cigarettes. This is allowed under *Cipollone*. The CUTPA claim alleges a wrongful scheme to establish and maintain a long-term base of consumers by illegally targeting minors to buy its cigarettes, and a conspiracy to defraud consumers by making affirmative, intentional misrepresentations about the health hazards of smoking. These claims are allowed under *Cipollone* because they are based on a duty not to deceive, a duty not to conspire to commit fraud, and a duty not to engage in illegal marketing activity or to encourage minors to violate the law, not a duty based on smoking and health.

This conclusion is supported by decisions in the Second Circuit as well as in other circuits which have consistently rejected preemption challenges such as the one made by Reynolds in this case. *See Tompkins v. R.J. Reynolds Tobacco*, 92 F.Supp.2d 70 (S.D.N.Y. 2000); *H.K. Porter Co. v. American Tobacco Co.*, 71 F.Supp.2d 73, 75 (E.D.N.Y.1999) (holding that Labeling Act preemption does not apply to deliberate acts to deceive); *Magnus v. Fortune Brands, Inc.*, 41 F.Supp.2d 217, 224 (E.D.N.Y.1999) (holding that a claim alleging defendant actively disseminated deceptive information is not preempted); *Laborers Local 17 Health & Benefit Fund v. Philip Morris*, 7 F.Supp.2d 277, 287 (S.D.N.Y.1998) ("Cipollone expressly held that claims of fraud by intentional misrepresentations are not preempted"), *rev'd on other grounds*, 191 F.3d 229 (2d Cir.1999).

Reynolds's motion to dismiss based on preemption is thus denied.

### III. *Alleged Pleading Defects in CUTPA Claim*

■ Izzarelli's complaint contains a 43–page appendix specifying approximately 150 allegedly fraudulent misrepresentations made by Reynolds in support of the CUTPA claim. The statements are specific as to speaker, date and content. Despite this specificity, Reynolds asserts that the CUTPA claim is not sufficiently pleaded because it only alleges that the statements were likely to mislead members of the public, consumers and minors, but not that Izzarelli was mislead. Reynolds further asserts that Izzarelli can not allege that she relied on many of the statements in the appendix because they were made either before she was born, or after she was an adult. It also claims that Izzarelli does not allege causation or injury. There is no merit to these claims.

■ In the amended complaint, Izzarelli alleges that as a result of Reynolds's continuing scheme to illegally market to minors, she was induced to begin smoking when she was a minor, became addicted to cigarettes and continued to smoke Reynolds's cigarettes until she developed cancer at the age of 37. This sufficiently alleges that Reynolds's deceptive misrepresentations were likely to mislead. This is all that is required to establish a CUTPA violation. Unlike a claim of fraud, CUTPA does not require reliance or a claim that the misrepresentation became part of the basis of the bargain. *See Associated Investment Co. v. Williams Assoc. IV*, 230 Conn. 148, 158, 645 A.2d 505 (1994). Under CUTPA, if the message is false, then it is a deceptive act without inquiry into whether the consumer actually believed the message or whether the consumer acted reasonably in relying on it. *See Southwest Sunsites, Inc. v. F.T.C.* 785 F.2d 1431 (9th Cir.1986); *In re Int'l Harvester Co.*, 104 F.T.C. 949, 1056 n. 21 (1984).

Izzarelli's allegations are sufficient because she alleges that the statements were likely to mislead minors such as herself to begin and or continue to smoke and to mislead consumers about the adverse health consequences of smoking and that the misrepresentations caused substantial injuries to consumers, including herself.

### IV. *Statute of Limitation—Youth Marketing Claim*

Reynolds also maintains that the portion of Izzarelli's CUTPA claim alleging illegal marketing to minors is time barred by CUTPA's three-year statute of limitations. It maintains that, based on Izzarelli's age, the statute ran three years after she reached the age of majority in 1984.

In opposition, Izzarelli asserts that the CUTPA claim alleges an overall wrongful scheme by Reynolds to develop and maintain a long-term consumer base which continued from 1954 to the present, as well as a continuing course of conduct designed to conceal the existence of the cause of action that continued until 1998. Thus, she maintains that the claim is timely with respect to any acts undertaken as part of the alleged continuing course of conduct. Iz-

zarelli also maintains that the youth marketing aspect of the claim is not time barred because she specifically alleges that Reynolds fraudulently concealed its youth marketing strategy, thereby tolling the statute of limitations as to this aspect of the CUTPA claim. She also asserts that her claim is not time barred because Reynolds's acts of fraudulent concealment of its youth marketing are independently actionable under CUTPA.

### A. Continuing Course of Conduct

 Reynolds correctly asserts that CUTPA's three-year limitation period is triggered upon the occurrence of the alleged violation, not the discovery of the alleged practice. *See Fichera v. Mine Hill Corp.,* 207 Conn. 204, 212, 541 A.2d 472 (1988). Although the Connecticut Supreme Court has held that where a self-concealing act gives rise to a CUTPA claim, the act cannot also serve to toll the statute of limitations, it has recognized that under certain circumstances, the limitations period may be tolled under the continuing course of conduct doctrine. *See Blanchette v. Barrett,* 229 Conn. 256, 265, 640 A.2d 74 (1994).

 To establish a continuing course of conduct that will toll the statute of limitations "there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." *Fichera v. Mine Hill Corp.,* 207 Conn. at 209, 541 A.2d 472. To find that a duty continued to exist after cessation of the act or omission there must be either a special relationship between the parties that gives rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. *See Blanchette v. Barrett,* 229 Conn. at 275, 640 A.2d 74.

Here, Izzarelli alleges that for a period of more than forty years, Reynolds directed a marketing strategy to minors, manipulated the nicotine in cigarettes to cause minors to become addicted, and issued deliberately false denials about the health hazards and addictive nature of smoking. She alleges that this scheme continued into the 1990s, at which time individuals who began smoking as minors were addicted. In sum, her allegations of recent wrongful conduct is related to the prior wrongful conduct and is thus sufficient to bring the case within the continuing course of conduct doctrine.

### B. Fraudulent Concealment

 Under the doctrine of fraudulent concealment, a cause of action is deemed to accrue against a defendant when a plaintiff first discovers its existence. *See* Conn.Gen.Stat. § 52–595. To establish fraudulent concealment, the plaintiff must prove that the defendants were aware of the facts necessary to establish the cause of action and intentionally concealed them from her for the purpose of obtaining delay in filing a complaint on the cause of action. *See Bound Brook Associates v. City of Norwalk,* 198 Conn. 660, 665, 504 A.2d 1047 (1986). Under Connecticut law, the concealment must have taken place within three years of the filing of the action. *See Willow Springs Condo. Ass'n. v. Seventh BRT Dev. Corp.,* 245 Conn. 1, 46, 717 A.2d 77 (1998).

In the amended complaint, Izzarelli has alleged that since 1994, Reynolds fraudulently concealed its illegal youth marketing practices and made false denials that were designed to conceal the true state of facts. Accordingly, the elements of the fraudulent concealment statute have been met.

### C. Fraudulent Concealment As Independently Actionable

 The court also finds that Izzarelli's allegations concerning Reynolds's conduct in making repeated fraudulent statements that it was not marketing to minors is independently actionable under CUTPA. *See Willow Springs Condo. Ass'n v. Sev-*

**178**

*enth BRT Develop. Corp.*, 245 Conn. at 46, 717 A.2d 77 (holding that while a single time-barred, self-concealing CUTPA violation can not toll the CUTPA statute of limitations, subsequent fraudulent or deceptive acts taken within the limitations period for the purpose of concealing a cause of action are independently actionable under CUTPA).

For these reasons, Reynolds's motion to dismiss the marketing to minors aspect of Izzarelli's CUTPA claim as time barred is denied.

### CONCLUSION

For the foregoing reasons, Reynolds's motion to dismiss [doc. # 19] the CUTPA claim on the grounds that the PLA is the plaintiff's exclusive remedy is DENIED without prejudice. The motion to dismiss the PLA and CUTPA claims as preempted by the Labeling Act is DENIED. The motion to dismiss the CUTPA claim as being insufficiently pleaded and time barred is also DENIED.