■ EDITH KRACKER, Individually and as Administratrix of the Estate of WALTER KRACKER, Deceased, Appellant, v SPARTAN CHEMICAL CO., INC., Defendant and Third-Party Plaintiff-Appellant, and FINE ORGANICS CORPORATION et al., Respondents. MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, Third-Party Defendant-Respondent.—In an action, *inter alia,* to recover damages for wrongful death, the plaintiff appeals, as limited by her brief, from stated portions of an order of the Supreme Court, Nassau County (McCabe, J.), entered December 21, 1990, which, *inter alia,* (1) adhered to an original determination made in a prior order of the same court, entered November 3, 1989, granting the motion of the defendants Spartan Chemical Co., Inc., and Fine Organics Corporation for summary judgment dismissing the complaint insofar as it is asserted against them, and (2) granted the motions for summary judgment of the defendants Hexcel Corporation, Chem Creations, Inc., and KRC Research, Inc., for summary judgment dismissing the complaint insofar as it is asserted against them.

Ordered that the order is affirmed insofar as appealed from, with one bill of costs.

Walter Kracker, the plaintiff's late husband, was a bus driver for 22 years, who, between 1979 and 1986, worked overtime shifts moving buses around in a garage operated by the Manhattan and Bronx Surface Transit Operating Authority (hereinafter MABSTOA). His overtime duties as a "shifter" included moving buses into and out of the wash area and refueling areas of the garage, and then returning them to their parking places.

In August 1986 the 47-year old Mr. Kracker was diagnosed as suffering from a rare lung disease known as bronchiolitis obliterans with organizing pneumonia. He died of this disease on October 14, 1986. The plaintiff claims that her husband's death was caused by exposure to alleged toxic agents in a variety of cleaning detergents and graffiti removers manufactured by the defendants and used to clean MABSTOA's buses.

The Supreme Court concluded that the defendants had demonstrated in their motions for summary judgment that neither the alkaline cleaners, which are basically soap, nor the graffiti removers, which are akin to paint removers, manufactured by them, could have caused the plaintiff's decedent's illness and his resulting death—even assuming that the plaintiff could show, as she had not done, that her husband had been exposed to these products in the course of his employment with MABSTOA.

On appeal, the plaintiff argues that her complaint should be reinstated because the defendants failed to demonstrate lack of causation. She also maintains that the proof she submitted in opposition to the defendants' motions was sufficient to create a triable issue of fact as to whether the decedent's death had indeed been caused by inhalation of fumes from the cleaning materials manufactured by the defendants, and she urges that she should be permitted additional discovery. The plaintiff's contentions are without merit.

It is well established that to obtain summary judgment, a movant must come forward with admissible evidence establishing the lack of merit to his opponent's cause of action (*Frank Corp. v Federal Ins. Co.,* 70 NY2d 966; *Alvarez v Prospect Hosp.,* 68 NY2d 320). Once the moving party has made a prima facie showing of entitlement to summary judgment, the burden shifts to the opponent to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which requires a trial (*Frank Corp. v Federal Ins. Co., supra; Alvarez v Prospect Hosp., supra*). "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" for this purpose (*Zuckerman v City of New York,* 49 NY2d 557, 562).

At bar, the defendants submitted affidavits, *inter alia,* from scientific experts, who pointed out that the record was devoid of evidence that the plaintiff's decedent had ever been exposed to any of their products, or if he had, that such exposure could have caused his fatal illness. Nowhere in the medical or scientific literature, these experts averred, was there any

reported case of a detergent or graffiti remover like the ones at bar causing bronchiolitis obliterans.

The plaintiff utterly failed to counter these showings with admissible evidence sufficient to raise a triable issue of fact. Rather, she argued that the deposition testimony of the decedent's treating physician, Dr. Andrew Weber, raised a triable issue of fact, even though Dr. Weber did not know what chemicals were in the defendants' products, and admitted that he had never before heard of an instance of bronchiolitis obliterans being caused by exposure to detergents. We note that while Dr. Weber claimed to have "ruled out" all causes of his patient's disease except inhalation of fumes from the defendants' solvents, upon closer questioning, he conceded that diesel exhaust was known to instigate the disorder, and that the causes of 50% of reported cases were "idiopathic", i.e., unknown. In addition, when asked if his opinion as to the source of the plaintiff's decedent's illness was a "firm conclusion" or something he "merely suspected", the most Dr. Weber would commit himself to was a "firm suspicion".

Dr. Weber's opinions were not rehabilitated by reference to the equally ill-founded speculations of the plaintiff's nonmedical experts, to the effect that because some of the ingredients in the defendants' products were capable of causing mild mucous membrane irritations at high concentrations, it followed that they were toxins capable of initiating a disease process that could culminate in bronchiolitis obliterans.

It is well established that an expert witness may not guess or speculate *(Espinosa v A & S Welding & Boiler Repair,* 120 AD2d 435). In addition, an expert's opinion testimony must be based upon facts personally known and testified to by the witness or disclosed by the evidence in the record *(Hambsch v New York City Tr. Auth.,* 63 NY2d 723; *DeTommaso v Fitzgerald Constr. Corp.,* 138 AD2d 341). As the Court of Appeals noted in *People v Jones* (73 NY2d 427, 430), "an expert's opinion not based on facts is worthless" because " '[a]n expert's opinion is only as sound as the facts upon which it is based' " *(People v Jones, supra,* at 430, citing *Caton v Doug Urban Constr. Co.,* 65 NY2d 909, 911; and *People v Cronin,* 60 NY2d 430, 434; *see, Matter of Miller v National Cabinet Co.,* 8 NY2d 277, 282-283).

Consequently, where, as here, the defendants established that there was no causal relationship between their products and the plaintiff's decedent's illness, and their demonstration was not effectively rebutted by the plaintiff, the complaint was

properly dismissed *(see, Koehler v Schwartz*, 48 NY2d 807; *Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065; *cf., Sewar v Gagliardi Bros. Serv.*, 51 NY2d 752, 758-759).

The plaintiff did not complain that the discovery she had received from the defendants was inadequate until the instant summary judgment motions were served *(see, Hecht v Vanderbilt Assocs.*, 141 AD2d 696, 700). The outstanding information she now claims to need is either not clearly specified or is irrelevant to the central issue of causation *(see, Goldheart Intl. v Vulcan Constr. Corp.*, 124 AD2d 507, 508). Since it is clear that further discovery would not have produced relevant information, it would have been error to allow it to delay summary judgment *(see, Goldheart Intl. v Vulcan Constr. Corp., supra*, at 508; CPLR 3212 [f]). Sullivan, J. P., Balletta, Eiber and O'Brien, JJ., concur.