■ Daniel Miele, Appellant, v American Tobacco Company et al., Respondents, et al., Defendants. [770 NYS2d 386]—

In an action, inter alia, to recover damages for personal injuries, the plaintiff appeals, as limited by his brief, from so much of six orders of the Supreme Court, Nassau County (Martin, J.), all dated June 29, 2001, as granted those branches of the respective motions of the defendants Philip Morris, Inc., R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, Brown & Williamson Tobacco Corporation, individually and as successor by merger to The American Tobacco Company, the Council for Tobacco Research-USA, Inc., and the Tobacco

Institute, Inc., which were for summary judgment dismissing the causes of action to recover damages for pre-1969 failure to warn, post-1969 fraudulent concealment, and concerted action to the extent that cause of action is predicated based on allegations of negligence, and so much of the same orders as granted those branches of the motions of the defendants Philip Morris, Inc., R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, and Brown & Williamson Tobacco Corporation, individually and as successor to The American Tobacco Company, which were to dismiss the cause of action to recover damages for post-1969 strict product liability design defects.

Ordered that the orders are reversed insofar as appealed from, on the law, those branches of all of the respondents' motions which were for summary judgment dismissing the causes of action to recover damages for pre-1969 failure to warn, post-1969 fraudulent concealment, and concerted action to the extent that cause of action is predicated on allegations of negligence are denied, those causes of action are reinstated insofar as asserted against all of the respondents, and those branches of the motions of the respondents Philip Morris, Inc., R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, and Brown & Williamson Tobacco Corporation, individually and as successor by merger to The American Tobacco Company, which were to dismiss the cause of action to recover damages for post-1969 strict product liability design defects are denied, and that cause of action is reinstated insofar as asserted against those respondents.

The plaintiff alleged that his deceased wife (hereinafter the decedent) contracted lung cancer from smoking cigarettes that were manufactured, promoted, and/or sold by the respondents for more than 20 years. The respondents are five cigarette manufacturers, Philip Morris, Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, individually and as successor by merger to The American Tobacco Company, and Lorillard Tobacco Co., and two tobacco-related entities, the Tobacco Institute, Inc., and the Council for Tobacco Research-USA, Inc.

The Supreme Court dismissed the plaintiff's causes of action based on the failure to warn of the dangers of cigarette smoking before the effective date of the Federal Cigarette Labeling and Advertising Act, as amended by the Public Health Cigarette Smoking Act of 1969 (15 USC § 1331 *et seq.*) (hereinafter the Act), finding that the respondents established, as a matter of law, that the risks of smoking were a matter of common knowledge at the time the decedent began smoking. We find, however,

that the plaintiff, in opposition to the motion, raised issues of fact as to whether consumers were fully aware of the health hazards posed by smoking cigarettes when the decedent began smoking, particularly considering that the respondents disseminated information, at the relevant time, disputing the validity of the scientific evidence linking cigarette smoking to cancer and other diseases. Based upon the conflicting evidence presented, a reasonable juror could conclude that, at best, there was great confusion as to the hazardous effects of smoking. Thus, this question should be determined by a jury.

Furthermore, the Supreme Court improvidently exercised its discretion by disregarding the affidavit of the plaintiff's expert in which he opined that consumers who began smoking in the 1940's through the 1960's did not have a true understanding of the health hazards posed by smoking cigarettes. An expert is qualified to proffer an opinion if he or she is "possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable" (*Matott v Ward,* 48 NY2d 455, 459 [1979]). The competence of an expert in a particular subject may derive from long observation and real world experience, and is not dependent upon formal training or attainment of an academic degree in the subject (*see Price v New York City Hous. Auth.,* 92 NY2d 553, 559 [1998]). The plaintiff established that his expert witness, Dr. Allen Feingold, had a basis for formulating an opinion concerning the public awareness or lack thereof of the dangers of smoking tobacco. Specifically, the opinion was based both on his extensive personal experience interviewing and treating smokers, and on reliable reports and studies, including reports of the Surgeon General of the United States and the Department of Health Care Policy at Harvard Medical School. The respondents' objections to Dr. Feingold's qualifications on the subject of inquiry do not preclude the admission of his testimony; but rather they affect the weight to be accorded to it by a jury (*see Kwasny v Feinberg,* 157 AD2d 396 [1990]).

"[I]n cases where reasonable minds might disagree as to the extent of plaintiff's knowledge of the hazard, the question is one for the jury" (*Liriano v Hobart Corp.,* 92 NY2d 232 [1998], citing *Jiminez v Dreis & Krump Mfg. Co.,* 736 F2d 51, 55-56 [2d Cir 1984]). Only by deeming the plaintiff's expert unqualified and thereby disregarding his opinion could the Supreme Court and the dissent herein conclude that, as a matter of law, the dangers of smoking were common knowledge at the time the decedent began to smoke. Since however, the plaintiff established that Dr. Feingold was possessed of sufficient skill, knowl-

edge, and experience to give his opinion on the subject, and recognizing the role of the Supreme Court on this motion for summary judgment as issue finding and not issue determination, we reinstate the pre-1969 failure to warn cause of action against all of the respondents.

We also reinstate the plaintiff's causes of action to recover damages for post-1969 fraudulent concealment. The Supreme Court dismissed these causes of action, holding that they were pre-empted by the Act. In *Cipollone v Liggett Group* (505 US 504, 524 [1992]), the United States Supreme Court (hereinafter the USSC) held that the central inquiry for determining whether a cause of action is preempted by the Act is "whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion,' giving that clause a fair but narrow reading." Concerning fraudulent concealment specifically, the USSC held that "claims that [defendants] concealed material facts are . . . not pre-empted insofar as those claims rely on a state-law duty to disclose such facts through channels of communication other than advertising or promotion" (*Cipollone v Liggett Group, supra* at 528).

The plaintiff asserts that, in addition to making actively fraudulent misrepresentations, the defendants "suppressed, ignored and disregarded test results not favorable to the tobacco industry" and "willfully and intentionally failed to disclose the material facts regarding the dangerous and addictive nature, properties, and propensities of the cigarette by concealing and suppressing material facts." New York recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair (*see Stevenson Equip. v Chemig Constr. Corp.,* 170 AD2d 769 [1991], *affd* 79 NY2d 989 [1992]); *Young v Keith,* 112 AD2d 625 [1985]; 60A NY Jur 2d, Fraud and Deceit § 98). "Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact" (*Nasaba Corp. v Harfred Realty Corp.,* 287 NY 290, 295 [1942]). Since the predicate duty underlying the plaintiff's fraudulent concealment claims is a state-law duty not to deceive, we agree with the plaintiff that the Supreme Court improperly held that his post-1969 fraudulent concealment causes of action were preempted by the Act (*see Izzarelli v R.J. Reynolds Tobacco Co.,* 117 F Supp 2d 167 [D Conn 2000]; *but see Small v Lorillard*

*Tobacco Co.,* 252 AD2d 1 [1998], *affd on other grounds,* 94 NY2d 43 [1999]).

In addition, the plaintiff's causes of action to recover damages for post-1969 strict product liability design defects were erroneously dismissed as against the manufacturer respondents, on the ground that cigarettes were in a condition reasonably contemplated by the ultimate consumer. "[C]onsumer expectations do not constitute an independent standard for judging the defectiveness of product designs . . . The mere fact that a risk presented by a product design is open and obvious, or generally known, and that the product thus satisfies expectations . . . may substantially influence or even be ultimately determinative on risk-utility balancing in judging whether the omission of a proposed alternative design renders the product not reasonably safe. It follows that, while disappointment of consumer expectations may not serve as an independent basis for allowing recovery under [the design defect theory], neither may conformance with consumer expectations serve as an independent basis for denying recovery. Such expectations may be relevant in both contexts, but in neither are they controlling" (Restatement [Third] of Torts, Products Liability § 2, Comment *g*).

While the dissent herein suggests that New York applies a consumer expectations test to design defect causes of action, the Court of Appeals made clear in *Denny v Ford Motor Co.* (87 NY2d 248 [1995]), that the determination of whether a design defect is actionable requires a balancing of the risks and utilities of the product, with the consumer's degree of awareness of the product's potential danger being but one factor to consider in that analysis (*see also Scarangella v Thomas Built Buses,* 93 NY2d 655 [1999] [taking into consideration, as one risk-utility factor, that the product was in condition contemplated by consumer at time of purchase]; *Micallef v Miehle Co. Div. of Miehle-Goss Dexter,* 39 NY2d 376, 387 [1976] ["patent-danger doctrine should not, in and of itself, prevent a plaintiff from establishing his case" for design defect]). The plaintiff's design defect causes of action as against the manufacturer respondents, therefore, were not subject to dismissal based solely on the conclusion that, as a matter of law, after 1969 when warnings were required to be included on cigarettes, cigarettes were in the condition contemplated by consumers at the time of purchase respective.

The evidence submitted by the plaintiff in opposition to the respondents' respective motions for summary judgment, particularly the affidavit of William A. Farone, a scientist formerly employed by the respondent Philip Morris, Inc., in

which he states that the tobacco companies opted not to develop, pursue, or exploit available technologies to reduce the toxins in cigarettes which cause disease, sufficed to raise an issue of fact as to whether the foreseeable risk of harm posed by cigarettes could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer respondents. It is ineluctable that, based upon the evidence presented by the plaintiff, a jury may determine that the tobacco companies' objective was to entrap the cigarette smoker to preserve and enhance their economic objectives. Therefore, the Supreme Court erred in dismissing the design defect causes of action against those respondents.

Moreover, we disagree with the Supreme Court's dismissal of the plaintiff's concerted action claim insofar as it is predicated upon allegations of negligence. The concerted action theory of liability for injury to a third party will attach when one knows that another's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other, and "[t]his is true both when the act done is an intended trespass . . . and when it is merely a negligent act" (Restatement of [Second] Torts § 876 [b], Comment *d*, Illustration 6]).

Based on the foregoing, we reverse the orders insofar as appealed from, and reinstate, as against all of the respondents, the plaintiff's causes of action to recover damages for pre-1969 failure to warn, post-1969 fraudulent concealment, and concerted action insofar as predicated upon allegations of negligence. Furthermore, we reinstate the post-1969 strict product liability design defects causes of action insofar as asserted against Philip Morris Inc., R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, and Brown & Williamson Tobacco Corporation, individually and as successor by merger to the American Tobacco Company. We note that the plaintiff did not appeal from so much of the orders as dismissed the design defect causes of action as against the Council for Tobacco Research-USA, Inc., and the Tobacco Institute, Inc., on other grounds. Altman, J.P., S. Miller and Luciano, JJ., concur.

McGinity, J., concurs in part and dissents in part and votes to reverse the order insofar as it dismissed the cause of action to recover damages based on concerted action to the extent that cause of action is predicated on allegations of negligence, on the law, and to otherwise affirm the order, with the following memorandum: Since I conclude that the plaintiff's causes of action to recover damages for pre-1969 failure to warn, fraudulent concealment, and post-1969 strict product liability design defects either are without merit or are pre-empted by federal law, I

must respectfully dissent from the majority's decision to reverse the dismissal of those causes of action. However, I agree with the majority's conclusion to reverse the dismissal of the causes of action to recover damages based on concerted action to the extent that cause of action is predicated on allegations of negligence.

In support of their respective motions for summary judgment, the respondents submitted evidence that the plaintiff's decedent began smoking, at the earliest, in 1962. According to the respondents' expert, Michael E. Parish, Ph.D., a recognized expert on the public's common knowledge that smoking is addictive and causes cancer, as early as 1952 periodicals across the country reported a link between smoking cigarettes and lung cancer. Further, Parish stated that as early as 1936 New York's school curriculum required teachers and administrators to inform students of the dangers of smoking. The respondents submitted evidence that the plaintiff's decedent took a health class in high school where students were shown a picture of a healthy lung as compared to a smoker's lung. Finally, Parish asserted that the 1964 Surgeon General's report, which reported the health risks of smoking, was widely covered in the media. As evidence of the plaintiff's decedent's actual knowledge that smoking was hazardous to her health, the defendants submitted deposition testimony from her sisters and classmates, who all testified that she began smoking in the mid-1960's. One of the plaintiff's decedent's sisters testified at her deposition that, in high school, she advised the plaintiff's decedent that she shouldn't smoke. The plaintiff testified that when he met his wife she was smoking two packs per day and smoked in every room of the house. The respondents submitted testimony at the examination before trial from the plaintiff's decedent's coworkers where it was revealed that the firm where they worked had a smoking room, that the coworkers had discussions about another coemployee who died of lung cancer, and that they knew "smoking was bad for us."

The plaintiff's first cause of action to recover damages for pre-1969 failure to warn was properly dismissed by the Supreme Court because the dangers of smoking were common knowledge at the time the plaintiff's decedent began smoking (*see Martino v Sullivan's of Liberty*, 282 AD2d 505 [2001]; *Small v Lorillard Tobacco Co.*, 252 AD2d 1 [1998], *affd on other grounds* 94 NY2d 43 [1999]; *Lancaster Silo & Block Co. v Northern Propane Gas Co.*, 75 AD2d 55 [1980]). The majority concludes that the plaintiff raised triable issues of fact regarding the respondents' duty to warn through the submission of the affidavit of Dr. Al-

lan Feingold, a specialist in internal and pulmonary medicine. The Supreme Court correctly concluded that Dr. Feingold, a medical doctor, was not qualified to render opinions concerning public awareness of the dangers of smoking before 1969 (*see Meiselman v Crown Hgts. Hosp.*, 285 NY 389 [1941]; *Pignataro v Galarzia*, 303 AD2d 667 [2003]; *Dimond v Heinz Pet Prods. Co.*, 298 AD2d 426 [2002]). The plaintiff contends that documentary evidence showing the tobacco industry challenged the research showing cigarettes were dangerous to one's health created an issue of fact, yet such evidence emphasized the known fact that the public was fully aware before 1969 of the health dangers related to smoking. There is no evidence in the record that the plaintiff's decedent was aware of any documents refuting the findings that smoking is hazardous to one's health. Accordingly, the plaintiff's pre-1969 failure to warn cause of action was properly dismissed.

The plaintiff's cause of action to recover damages for post-1969 fraudulent concealment is preempted by the Federal Cigarette Labeling and Advertising Act, as amended by the Public Health Cigarette Smoking Act of 1969 (15 USC § 1331 *et seq.*) (hereinafter the Act). There is no basis upon the extensive factual record in this case to place the plaintiff's fraudulent concealment claim outside of the purview of the Act. The United States Supreme Court held in *Cipollone v Liggett Group* (505 US 504 [1992]), that the Act's prohibition against the imposition by the states of any "requirement or prohibition based on smoking and health" (15 USC § 1334 [b]), preempts common-law actions as well as positive enactments (*Cipollone v Liggett Group, supra* at 521). If the legal duty that is the predicate for the common-law action constitutes a "requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion," then it is preempted (*Cipollone v Liggett Group, supra* at 523-524 [internal quotation marks omitted]). Here, assuming that the respondents complied with the advertising and promotion requirements of the Act, the majority is placing a greater burden upon them to disclose than the Act required. Accordingly, the fraudulent concealment cause of action was properly dismissed (*see Altman v Fortune Brands*, 268 AD2d 231 [2000]).

The plaintiff's cause of action to recover damages for post-1969 strict product liability design defects was also properly dismissed. While the majority relies upon the Restatement (Third) of Torts, Products Liability § 2 to support its position that the fact that a product meets with consumer expectations is not dispositive, it is respectfully submitted that such state-

ment is not the law of this state. "[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use . . ." (*Bombara v Rogers Bros. Corp.*, 289 AD2d 356, 357 [2001], quoting *Robinson v Reed-Prentice Div.*, 49 NY2d 471, 479 [1980]). Consumer expectation is, therefore, the first prong of a two-prong test and, in this case, in light of the numerous warnings received by the plaintiff's decedent through advice from siblings, teachers in health classes, or coworkers and periodicals, as well as the warnings required by the Act, the danger to the plaintiff's decedent's health was or should have been contemplated. Further, the plaintiff's proffered expert, Dr. Feingold, a medical doctor specializing in internal and pulmonary medicine, was not qualified to give an opinion regarding whether cigarette manufacturers could have designed a safer cigarette (*see Meiselman v Crown Hgts. Hosp., supra*).

I agree with the majority's conclusion to reverse the Supreme Court's dismissal of the concerted action claim with regard to all but the intentional tort claims. There is no requirement that the concerted action be intentional; rather, joint and several liability could attach when the respondents have an understanding to participate in a common plan or design to commit a tortious act (*see City of New York v Lead Indus. Assn.*, 190 AD2d 173 [1993]; *see also Rastelli v Goodyear Tire & Rubber Co.*, 79 NY2d 289 [1992]). Dismissal of the concerted action claim is premature until a determination of liability has been made.