Agulnick v Agulnick (2020 NY Slip Op 07335)





Agulnick v Agulnick


2020 NY Slip Op 07335


Decided on December 9, 2020


Appellate Division, Second Department


Dillon, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 9, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JOHN M. LEVENTHAL
JOSEPH J. MALTESE
FRANCESCA E. CONNOLLY, JJ.


2019-07339
 (Index No. 202374/18)

[*1]Marc Agulnick, appellant,
v
Adrienne Agulnick, respondent.



APPEAL by the plaintiff, in an action for a divorce and ancillary relief, from an order of the Supreme Court (Thomas Rademaker, J.), entered April 25, 2019, in Nassau County. The order, insofar as appealed from, denied that branch of the plaintiff's motion which was for summary judgment dismissing the defendant's counterclaim for a divorce on the ground of adultery.



Law Offices of Kenneth J. Weinstein, P.C., Garden City, NY (Kenneth J. Weinstein of counsel), for appellant.
Sunshine & Feinstein LLP, Garden City, NY (Joel M. Sunshine of counsel), for respondent.



DILLON, J.


OPINION & ORDER
Domestic Relations Law § 170 sets forth seven grounds for a divorce cognizable in New York. Some of the "traditional" grounds for divorce, including adultery, have been relegated to lesser importance in the wake of the state's enactment of the equitable distribution provisions of Domestic Relations Law § 236(B)(5) and the "No Fault" divorce provision of Domestic Relations Law § 170(7) in 2010. Our state's decisional authorities on adultery, including its elements and defenses, and the burdens for propounding or opposing the cause of action, have aged for more than a century. Yet, even with the enactment of No Fault divorce in our state, there are circumstances where allegations of adultery may assume great significance to matrimonial actions. This action is one such example, and allows us to examine, and sharpen for the matrimonial bar, the evidence that a party must present to establish prima facie entitlement to summary judgment dismissing a cause of action alleging adultery, and the nature of opposing evidence sufficient to raise a triable issue of fact.
I. Facts
The plaintiff, Marc Agulnick (hereinafter the husband), and the defendant, Adrienne Agulnick (hereinafter the wife), were married in 2004 and reside in Nassau County. The husband commenced an action for divorce on October 3, 2018, upon the filing of a summons with notice and a verified complaint, alleging an irretrievable breakdown of the marriage for a period six months prior to commencement of the action (see Domestic Relations Law § 170[7]) as the sole ground for the divorce, and seeking ancillary relief. The wife served an answer with counterclaims dated November 21, 2018, and, thereafter, an amended answer with counterclaims dated January 7, 2019. As relevant here, the verified amended answer contained a counterclaim for divorce on the ground of adultery under Domestic Relations Law § 170(4). The counterclaim alleged that from approximately March of 2014 and thereafter the husband openly engaged in an adulterous [*2]relationship with R.L., who slept in the marital home, vacationed with the husband in Florida, resided with him in another marital home in Florida, and accompanied him at social settings. The counterclaim further alleged that the husband's activities included sexual intercourse and was without the wife's consent, connivance, privity, or procurement. The husband denied all allegations of adulterous behavior in a reply dated February 1, 2019.
The verified amended answer was served after the husband moved to dismiss the counterclaims alleged in the wife's initial verified answer for failing to state a cause of action (see CPLR 3211[a][7]). The Supreme Court examined the motion against the allegations contained in the wife's verified amended answer and counterclaim. In an order dated January 23, 2019, the court found the adultery counterclaim to be pleaded with sufficient particularity under CPLR 3016(c), and therefore denied the husband's motion.
The wife's counterclaim alleging adultery has significance to the financial issues of the parties' divorce action because of the terms of the parties' post-nuptial agreement, dated September 26, 2006. In the agreement, the husband admitted "prior acts of infidelity," and agreed, if he engaged in certain acts of sexual contact with a third party thereafter, that the wife would receive 80% of his future gross lifetime earnings from all sources, minus FICA, and 80% of all marital assets. The husband also agreed to assume 100% of certain defined liabilities, and to pay the wife her marital share of the value of his medical license. Although the enforceability of this agreement is not at issue on this appeal, the viability or non-viability of the wife's adultery counterclaim against the husband has obvious financial ramifications for the outcome of the parties' existing divorce action.
Shortly after the Supreme Court denied the husband's motion to dismiss the adultery counterclaim under CPLR 3211(a)(7), the husband moved, inter alia, for summary judgment dismissing that counterclaim under CPLR 3212. In support, the husband proffered an affidavit in which he stated that he "never engaged in a sexual relationship of any kind or nature with" R.L., who he identified by full name in the papers as the family babysitter. The husband further averred that the presence of R.L. in the parties' homes was "at all times . . . in a professional working capacity, approved and initiated by [the wife], wherein [R. L.] supervises our children." The motion was also supported by an affidavit of R.L., wherein she identified herself as the babysitter and caretaker of the parties' children, and stated that she "never engaged in a sexual relationship of any kind or nature with" the husband, and that "[a]ny and all times I have been in the [husband]'s presence have been in a professional working capacity wherein I supervises [sic] the parties' children."
In opposition, the wife asserted in an affidavit that the husband has "shown an inclination and desire to commit adultery" by virtue of events that had admittedly occurred over a decade earlier. She also stated that the husband had the opportunity to commit adultery, as R.L. had vacationed with him during the marriage, spent a night at the marital residence and at a vacation home while the husband was present, and accompanied the husband at social functions. The wife also argued that summary judgment was premature absent discovery on these issues.
In reply, the husband and R.L. each provided affidavits in further support of summary judgment dismissing the adultery counterclaim. Both averred that R.L.'s overnight stays at the marital homes and on vacation were always in a babysitter capacity with the children present, that R.L. slept in a room at the marital home assigned to her by the wife, and that R.L. always attended any social events in a babysitter capacity with the wife and children present.
In the order appealed from, the Supreme Court denied that branch of the husband's motion which was for summary judgment dismissing the adultery counterclaim. The court determined that the husband's various submissions denying a sexual relationship with R.L. were "conclusory and self-serving," and, therefore, failed to meet his prima facie burden on summary judgment.
For reasons set forth below, we reverse.
II. Legal Analysis
As often stated by appellate courts, a party seeking summary judgment bears the initial burden of demonstrating its prima facie entitlement to the requested relief (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853; Zuckerman v City of New York, 49 NY2d 557, 562; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067). A party moving for summary judgment cannot attempt "to remedy a fundamental deficiency in the moving papers by submitting evidentiary material with the reply" (Ford v Weishaus, 86 AD3d 421, 422 [internal quotation marks omitted]; see Arriola v City of New York, 128 AD3d 747; Henry v Peguero, 72 AD3d 600). Only [*3]if the movant meets the prima facie burden does the burden then shift to the party opposing summary judgment to tender evidence, in a form admissible at trial, sufficient to raise a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324; Zuckerman v City of New York, 49 NY2d at 562; Friends of Animals v Associated Fur Mfrs., 46 NY2d at 1068). Material proffered in opposition to summary judgment is insufficient if it constitutes mere surmise, suspicion, speculation, or conjecture (see Nerey v Greenpoint Mtge. Funding, Inc., 144 AD3d 646, 648; Morgan v New York Tel., 220 AD2d 728, 729). These rules apply equally to summary judgment motions directed to counterclaims (e.g. McLaughlin v Orthopedic & Sports Medicine, P.C., 59 AD3d 687, 688). The prima facie showing that is required of the moving party is governed by the allegations made in the pleading that is being attacked (see Breest v Long Is. R.R., 140 AD3d 819; Wald v City of New York, 115 AD3d 939, 940). Ultimately, the role for the court in addressing a motion for summary judgment is issue finding rather than issue resolution (see Kriz v Schum, 75 NY2d 25, 33; Shabat v State of New York, 177 AD3d 1009, 1010; Miele v American Tobacco Co., 2 AD3d 799, 803-804).
Allegations of adultery present unique issues of proof. The conduct is oftentimes clandestine and out of public view (see Moller v Moller, 115 NY 466, 468), and proving it in such instances must depend upon circumstantial evidence. Recognizing this, our decisional authority has held since at least 1877 that adultery may be circumstantially proven by means of a three-part test consisting of (1) a lascivious desire, and (2) the opportunity to gratify the desire, and (3) acting upon the desire (see Yates v Yates, 211 NY 163, 168; Pollock v Pollock, 71 NY 137, 153; see also Davis v Davis, 263 AD 929; Kay v Kay, 235 AD 25, 32; Graham v Graham, 157 AD 52; Roth v Roth, 90 AD 87, 89, affd 183 NY 520; Jacobstein v Jacobstein, 201 NYS 1, 3 [Sup Ct, Monroe County], affd 209 AD 846, affd 240 NY 693; Tatum v Tatum, 88 Misc 674, 678 [Sup Ct, Nassau County]; McNeir v McNeir, 76 Misc 661, 667 [Sup Ct, Dutchess County], affd 151 AD 889). Other authorities similarly summarize the three-part test as involving inclination, opportunity, and intent (see George v George, 34 AD2d 888; Kerr v Kerr, 134 AD 141; Salomon v Salomon, 102 Misc 2d 427, 431 [Sup Ct, Suffolk County]; Alan D. Scheinkman, Practice Commentaries, McKinney's Cons. Laws of NY, Domestic Relations Law § C170:11 [2010]). The act itself must also meet the requirements of Domestic Relations Law § 170(4), which defines adultery "as the commission of an act of sexual intercourse, [or other] sexual conduct, voluntarily performed by [a spouse], with a person other than the [other spouse] after the [spouses'] marriage." Conduct that falls short of the statutory definition does not qualify as adultery.
There is a dearth of decisional authority addressing summary judgment motions to establish or dismiss claims of adultery. There are three independent explanations for that. The first explanation is that until January 1, 1979, matrimonial parties were generally prohibited by New York law from moving for summary judgment on the issue of the grounds for divorce. The prohibition was contained in the former version of CPLR 3212(d), until its repeal (see L 1978, ch 532, §§ 1-3; Rauch v Rauch, 91 AD2d 407, 409). Before that time, summary judgment could not be obtained by the plaintiff (or a defendant on a counterclaim) no matter how strong or incontrovertible the moving party's evidence might have been. "Reverse summary judgment" was also prohibited, where a defendant might move for summary judgment in favor of a non-moving party by admitting allegations contained in that party's complaint (see generally Kahrs v Kahrs, 111 AD2d 370, 371; Winn v Winn, 97 AD2d 409). The reason behind the former statute was to prevent any manner of collusion between the parties in the dissolution of a marriage. As a result, the decisional authorities on issues of adultery, prior to 1979, arose exclusively from trial decisions on the cause of action and appeals from divorce judgments, and not from motions for summary judgment.
A second reason for the dearth of decisional authority on adultery involves the collateral matrimonial issue of equitable distribution. Domestic Relations Law § 236(B)(5)(d) sets forth the factors that courts are to take into consideration in determining equitable distribution. The statute became effective on July 19, 1980 (see L 1980, ch 281, §§ 9, 47). Marital fault is not among the defined factors to be considered for equitable distribution, and absent the rare case involving "egregious fault" that shocks the conscience of the court (see O'Brien v O'Brien, 66 NY2d 576, 589-590; Blickstein v Blickstein, 99 AD2d 287, 292), the ground underlying the dissolution of a marriage has no bearing on the division of the parties' assets and liabilities (see Howard S. v Lillian S., 14 NY3d 431, 435). Any consideration of marital fault is, from the standpoint of New York public policy, inconsistent with the underlying statutory assumption that marriage is an economic partnership with each spouse being entitled to an equitable share of the marital estate. As a consequence, many grounds for divorce, including adultery, have assumed less practical significance [*4]to matrimonial litigants, who now place greater focus on matters of equitable distribution, child custody and parental access, child support, child-related add-on expenses, and durational or lifetime maintenance. By extension, there has been little demand to address causes of action alleging adultery by means of summary judgment motions, so that almost no summary judgment determinations have been reported on the subject during the past 40 years.
A third reason that few reported cases address the issue of adultery, either by means of summary judgment or by trial judgment and appeal, involves the enactment of New York's "No Fault" divorce law in 2010 (see Domestic Relations Law § 170[7], as added by L 2010, ch 384, § 1) together with the more liberal public policy it represents today. The ease and availability of No Fault divorce, based upon an irretrievable breakdown of the marriage for a period of at least six months, has had the practical effect of displacing other grounds that may otherwise have been asserted and litigated in many actions, resulting in fewer decisional authorities on those grounds, including adultery.
The case law that exists regarding adultery is therefore restricted to trial judgments and appeals for much of the past century and more. During the past 40 years, after the repeal of former CPLR 3212(d), summary judgment motions to establish or dismiss adultery causes of action have been few and far between. The decisions on adultery reported during the past century carry their developed concepts forward to more recent summary judgment motions, including the circumstantial evidence standards that had earlier been defined as requiring lascivious desire, opportunity, and intent (e.g. Salomon v Salomon, 102 Misc 2d at 431). The few reported decisions dealing with the elements and evidentiary burdens of adultery have gathered dust on our shelves for a century and more and now occupy the remote recesses of Westlaw and Lexis. This appeal provides us with an opportunity to fill the vacuum, by discussing the burden of proof governing the proponent's motion for summary judgment and the nature of the evidence that an opponent must present to successfully raise a triable issue of fact in opposition, in the context of today's workplace realities.
The circumstantial evidence elements for adultery, consisting of lascivious desire, opportunity, and intent, date back to a time when women were not as routinely present in workplaces as they are now. Women who did work outside the home a century ago were typically employed in discrete professions such as telephone operators, teachers, and nurses (see United States Department of Labor, The Occupational Progress of Women, 1910 to 1939, Women's Bureau Bulletin No. 104 [1933]). Society was also less mobile, when the use of automobiles and airplanes were far less common than they are today. Currently, men and women work side-by-side at the great majority of workplaces. They work in the same locations, attend meetings, share lunch rooms, participate in professional events, interact in social, political, religious, and charitable activities, exercise at gyms, and fly on airplanes together to faraway seminars and business trips. In addition, certain employees may reside at their employers' homes including au pairs, household help, and home aides.
Under the circumstances of contemporary daily interactions between men and women, the "opportunity" for infidelity cannot be interpreted to mean mere "proximity," but must instead necessarily mean "proximity plus." The "plus" need not be objective or irrefutable evidence. Instead, it may be facts or evidence from which reasonable inferences may be drawn, beyond the mere proximity of two people themselves. Proximity may be evidence sufficient to defeat summary judgment if accompanied by something more, such as, a hotel receipt for two, plane tickets for two to a particular destination deviating from the norm, potentially incriminating or suspicious e-mails or other writings, frequent get-togethers in non-professional settings, flirtatious behavior, or a suspicious conversation overheard by a witness. Such facts or evidence, beyond the mere temporal proximity of two persons, may permit an inference that a party's "acts are more consistent with guilt than with innocence" (Trumpet v Trumpet, 215 NYS2d 921, 924 [Sup Ct, Kings County]), and warrant the denial of summary judgment sought by the party accused of adulterous behavior.
A party moving for summary judgment dismissing an adultery cause of action is subject to the same evidentiary standard as the proponents of summary judgment generally, namely, the demonstration of a prima facie entitlement to the requested relief as a matter of law (see Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853; Zuckerman v City of New York, 49 NY2d at 562; Friends of Animals v Associated Fur Mfrs., 46 NY2d at 1067).
Here, the husband met his prima facie burden of establishing his entitlement to summary judgment dismissing the wife's counterclaim alleging adultery (see Westervelt v Westervelt, [*5]26 NY2d 865 [two persons living together in one-family household and their social appearances together is insufficient circumstantial evidence to establish adultery]; Pollock v Pollock, 71 NY at 153; cf. McGill v McGill, 77 AD2d 892). In his affidavit, the husband stated that he "never engaged in a sexual relationship of any kind or nature with" R.L, and that R.L.'s presence in his various homes was "at all times . . . in a professional working capacity." The wife's counsel suggests that the denial of a "sexual relationship" does not rule out an occurrence of "sexual intercourse" as defined by Domestic Relations Law § 170(4), as a person could conceivably engage in an act of sexual intercourse while not considering oneself in a "relationship." However, the language of the husband's affidavit is more expansive than the wife's brief gives it credit for, as it denies a sexual relationship "of any kind or nature," which would necessarily include sexual intercourse as defined in the statute.
Although the husband's affidavit fails to address conduct alleged with R.L. while on vacation and at social events, R.L.'s affidavit, proffered by the husband in support of his motion, does address such conduct. R.L. identifies herself in her affidavit as the babysitter for the parties' children, denies "a sexual relationship of any kind or nature" with the husband, and states that she was in a professional working capacity at "[a]ny and all times . . . in the [husband]'s presence." R.L.'s affidavit is more expansive and all-encompassing than the husband's affidavit to the extent that her denial of sexual conduct at "any and all times" necessarily extends beyond the husband's homes to other settings, such as any vacation trip taken by members of the family and social occasions that R.L. attended. As to all of those occasions, R.L. explained that she was present to supervise the parties' children and that she performed that job during those occasions.
We disagree with the Supreme Court that the husband's evidence in support of summary judgment dismissing the adultery counterclaim was conclusory and self-serving. The husband's affidavit and R.L.'s separate affidavit contain specific averments which, read together, corroborate each other and satisfy his prima facie burden (see Auburn Custom Millwork, Inc. v Schmid & Schmid, Inc., 148 AD3d 1527, 1533; cf. Pollack v Pollack, 71 NY at 137). Relatedly, we reach our conclusion that the husband met his prima facie burden without reaching the averments contained in his and R.L.'s later reply affidavits (see Matthews v Bright Star Messenger Ctr., LLC, 173 AD3d 732, 733; Ford v. Weishaus, 86 AD3d at 422).
In opposition, the wife, in her affidavit, maintains that the husband's lascivious desire is evidenced by his admission of infidelity as memorialized in the parties' 2006 post-nuptial agreement. As to the element of opportunity, the wife's affidavit essentially repeats the allegations of the counterclaim itself, that R.L stayed overnight with the husband at the parties' homes and was with the husband at social functions. The wife urges that the lascivious desire and the opportunity for infidelity permit an inference that adultery occurred, warranting the denial of summary judgment dismissing the adultery counterclaim. The wife provides no information about alleged infidelity between the husband and any person other than R.L. during the time relevant to her adultery counterclaim.
Here, the wife's focus on the husband's "opportunity" to commit adultery amounts to the husband's mere proximity to R.L. at various times and places. Clearly, R.L. was the family babysitter and, in that capacity, could be expected to be in the husband's presence on many occasions, including occasional overnight stays. The wife offers no facts or evidence — whether objective, inferential, or otherwise — of any adulterous conduct between the husband and R.L. beyond their mere physical proximity to one another. The wife's affidavit provides no dates, describes no suspicious circumstance with any detail or particularity, identifies no particular relevant social event, and identifies no witness who observed conduct or heard comments between the husband and R.L. that might inferentially support a claim of adultery against the husband. There is no investigator, no photograph, and no suspicious documents, texts, emails, or social media posts. Put another way, the wife's opposition to summary judgment amounts to mere unilateral speculation, conjecture, guess, and surmise stemming from the husband's and R.L.'s mere proximity to one another, without anything more. The wife's conclusory affidavit cannot substitute for admissible evidence even recognizing, as we do, that the adultery counterclaim is premised upon circumstantial evidence and the court's role in determining summary judgment is that of issue-finding (see Kriz v Schum, 75 NY2d at 33; Shabat v State of New York, 177 AD3d at 1010; Miele v American Tobacco Co., 2 AD3d at 803-804).
For the foregoing reasons, the Supreme Court should have granted that branch of the husband's motion which was for summary judgment dismissing the counterclaim for a divorce on [*6]the ground of adultery.
III. Miscellaneous
The wife suggests that summary judgment should be denied because the Supreme Court held, in an order dated January 23, 2019, that the adultery counterclaim was pleaded with sufficient particularity to survive a motion pursuant to CPLR 3211(a)(7) to dismiss that counterclaim. We reject the argument, as the evidentiary standards and burdens applied for determining dismissal motions under CPLR 3211(a)(7) differ from those applied to summary judgment motions under CPLR 3212 (see Milone v US Bank N.A., 164 AD3d 145, 155).
The husband argues that the wife's affidavit should not be considered in opposition to summary judgment dismissing the adultery counterclaim. CPLR 4502(a) statutorily disqualifies a spouse from testifying against the other spouse in an action grounded upon adultery, except to prove the marriage, disprove the adultery, or disprove the defense after evidence has been introduced tending to prove such defense (see CPLR 4502[a]; Eades v Eades, 83 AD2d 972). CPLR 4502(a) is not frequently cited. The purpose of this and other statutory privileges from disclosing confidential communications is the public policy recognition that special relationships are akin to fiduciary bonds, which operate and flourish in an atmosphere of transcendent trust and confidence (see Lightman v Flaum, 97 NY2d 128, 133, citing Aufrichtig v Lowell, 85 NY2d 540, 546). Here, contrary to the husband's contentions, the wife's affidavit in opposition to summary judgment may be properly considered, and has been considered, as it was submitted to oppose the husband's own evidence that the adultery with R.L. had never occurred (cf. Tallent v Tallent, 22 AD2d 988, 989).
The wife also argues that summary judgment dismissing the adultery counterclaim was premature absent discovery on the issue. This argument is unavailing, as there is a long-standing rule that absent questions of "egregious fault," discovery is not permitted on matters of matrimonial grounds (see Howard S. v Lillian S., 14 NY3d at 436; Davis v Davis, 71 AD3d 13, 23; Corsel v Corsel, 133 AD2d 604; Ginsberg v Ginsberg, 104 AD2d 482, 483; Billet v Billet, 53 AD2d 564).
Since the wife has failed to raise a triable issue of fact about the opportunity to fulfill adulterous intent, as discussed herein, we need not address whether any admission by the husband of
an earlier infidelity reflected in the parties' 2006 post-nuptial agreement is sufficient evidence as to the issue of lasciviousness.
The parties' remaining contentions either are without merit or have been rendered academic in light of our determination.
IV. Conclusion
For the reasons stated, the Supreme Court should have granted that branch of the husband's motion which was for summary judgment dismissing the wife's counterclaim for a divorce on the ground of adultery.
Accordingly, the order is reversed insofar as appealed from, on the law, and that branch of the husband's motion which was for summary judgment dismissing the counterclaim for a divorce on the ground of adultery is granted.
LEVENTHAL, MALTESE and CONNOLLY, JJ., concur.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the husband's motion which was for summary judgment dismissing the counterclaim for a divorce on the ground of adultery is granted.
ENTER:
Aprilanne Agostino
Clerk of the Court